**Brenda PARTON, Appellant,**

v.

**GTE NORTH, INCORPORATED, a Wisconsin Corporation, Appellee.**

**Brenda PARTON, Appellee,**

v.

**GTE NORTH, INCORPORATED, a Wisconsin Corporation, Appellant.**

Nos. 91–3300, 91–3452.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided July 31, 1992.

Marjorie Bedrick Tarkow, Columbia, Mo., argued, for appellant.

David B. Rogers, Columbia, Mo., argued, for appellee.

Before McMILLIAN, BOWMAN, Circuit Judges, and EISELE,* Senior District Judge.

BOWMAN, Circuit Judge.

Brenda Parton appeals the Magistrate Judge's [1] denial of her Title VII discrimina-

---

* The HONORABLE GARNETT THOMAS EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. Honorable William A. Knox, United States

tory discharge claim and the amount of his award of attorney fees resulting from her successful sexual harassment claim. GTE North, Inc., cross-appeals the Magistrate Judge's finding that it subjected Parton to sexual harassment in violation of Title VII, and the court's award of any attorney fees in view of Parton's limited success. We affirm. In addition, we have taken with the case GTE's motions for sanctions against Parton's counsel as well as the motion for sanctions made by Parton's counsel, and now deny both motions.

GTE North employed Brenda Parton on April 27, 1973. From September 26, 1976, until her termination early in 1988, she was assigned to the installation and repair department, the first woman so employed by GTE North. Throughout Parton's career, she was disciplined numerous times. Tardiness and absenteeism were particular problems and, although her records demonstrated some improvement from time to time (generally after discipline for the problem), she would soon revert to poor attendance habits. Parton does not dispute any of the many disciplinaries documented in her file.

There was testimony at the three-day bench trial from which the Magistrate Judge concluded that the work environment in the warehouse out of which Parton worked was often hostile to female employees, Parton included. This evidence included sexually suggestive gestures and comments, the posting and distribution of lewd cartoons, and the assignment of undesirable work to Parton and other women when available male employees were not so assigned. Parton's immediate supervisor testified that he offered Parton extra help because he believed that she, as a woman, had less of the knowledge of home construction and mechanics necessary for one employed in an installation and repair position. These incidents took place over the course of years, but Parton never filed a sexual harassment complaint while she was a GTE employee, nor did she make such allegations to union officials or at the union grievance hearing preceding her discharge.

On January 22, 1988, GTE terminated Parton's employment with the company. The events leading up to her termination will be summarized briefly.

On December 17, 1987, Jerry Haddock, Parton's immediate supervisor, wanted to talk with Parton about job tickets from a previous job that she had completed with incorrect repair codes. He missed her at 7:30 a.m. at the warehouse, and thus began his effort to track her down. Haddock found out that Parton's first assignment was a third party report of a busy signal at a residence north of Columbia, Missouri. As Haddock later learned, Parton had left the warehouse on the east side of Columbia at 7:30 a.m., and had traveled seven or eight miles out of her way during rush hour to the GTE office on the west side of Columbia, where she called the customer and learned that the phone had inadvertently been left off the hook. Parton phoned in for her next assignment at 8:30 a.m., and was told to check on a report of static on the line at another residence. Haddock missed Parton at that residence but, after he kept another appointment, he located her at 10:40 a.m. at her third assignment. En route to that job, Parton had stopped for a break at a fast-food restaurant that was not on the way to the job.

Haddock cited Parton for being out-of-route, that is, for deviating without excuse from the most direct route when traveling from job to job. Because this was Parton's third out-of-route offense in less than a year, she was suspended for three days. Parton grieved her suspension through her union's procedure. The grievance was denied at the first level. Present at the second-level grievance hearing, held in January 1988, were Parton, two union officials, Haddock, his supervisor Mike Hoover, and Richard Morgart, the GTE executive in charge of the Missouri office.

At the second-level hearing, the events of December 17 were recounted, and Morgart thought that Haddock's inability to locate

Magistrate Judge for the Western District of Missouri. This case was tried before Magistrate Judge Knox by consent of the parties pursuant to 28 U.S.C.A. § 636(c) (West Supp.1992).

Parton at the second assignment warranted further attention. He questioned Parton about the work she performed at that location, and she indicated that she had found a crushed wire in the attic that she had repaired by splicing. Morgart was skeptical, and sent Haddock and a union representative to perform a "quality inspection" of Parton's work at the customer's residence. They found that a wire in the attic that ran to a corroded jack in the basement had recently been cut, which terminated service to that jack but solved the reported problem of static on the line.

When confronted with the results of the inspection, Parton's only response was that she should not have said anything at the second-level hearing. Haddock and Hoover recommended termination, and Morgart agreed. On January 22, 1988, Parton was terminated for a violation of standards of integrity and poor work performance. Parton's grievance of her discharge was denied, and the union declined to take it to arbitration. Parton was replaced by a male, the next person in line for any such opening.

I.

Parton contends that the trial court erred in two ways in concluding that her discharge was not motivated by her gender, first by misplacing the burden of proof and then by taking an erroneous view of the evidence.

The court treated Parton's discriminatory discharge claim as a classic *McDonnell Douglas* burden-shifting case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In such a case, the plaintiff is required to demonstrate a prima facie case of discrimination by proving membership in a protected class, performance at or near the employer's legitimate expectations, discharge, and replacement by a person of equal or lesser ability who is not a member of the protected class (or, in the alternative, the position remains open to be filled). Proof of a prima facie case creates a rebut-table presumption of discriminatory discharge, and the burden of going forward with the evidence shifts to the employer, who must articulate a legitimate, nondiscriminatory reason for discharge to avoid liability. Once the employer has satisfied this burden of going forward with the evidence, the plaintiff, in order to prevail, must show by a preponderance of the evidence that the employer's nondiscriminatory reason for discharge is pretextual, and that some impermissible form of discrimination was the true reason for discharge. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Concluding that the employer's legitimate reasons for Parton's discharge were not proved to be pretextual by a preponderance of the evidence, the court found in favor of GTE on Parton's discriminatory discharge claim.

■ It is Parton's contention, however, that this was a "mixed motive" case. She argues that the trial court could not find that she was subjected to a sexually hostile work environment, as it did, without also concluding that Parton's gender was a factor in her termination. According to the Supreme Court, if gender is a motivating factor, as Parton asserts it was here, then the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989).

Parton, however, has not met her initial burden. In order to establish a mixed-motive case in the first instance, she "must show that the employer actually relied on her gender in making its decision." *Id.* at 251, 109 S.Ct. at 1791. As the trial court noted, there is here no direct evidence that GTE was motivated to terminate Parton for gender-based reasons. *Parton v. GTE North, Inc.,* No. 89–4352–CV–C–66BA, slip op. at 20 n. 8, 1991 WL 355179 (W.D.Mo. Apr. 8, 1991). This therefore was not a mixed-motive case, and the court did not

err in applying the *Burdine* burden-shifting analysis.

■ Parton also contends that the trial court took an erroneous view of the evidence in failing to find discriminatory intent. We reject this contention. "[A] court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous under [Federal Rule of Civil Procedure] 52(a)." *Pullman–Standard v. Swint*, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1982). We thus "defer to any plausible recounting of the evidence" by the trial court. *Valdez v. Mercy Hosp.*, 961 F.2d 1401, 1402 (8th Cir.1992). After a careful reading of the record in this case,[2] we conclude that the court's finding that Parton was fired for legitimate, nondiscriminatory reasons was not clearly erroneous. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511. Such was the case here.

## II.

■ We turn next to the issues raised concerning the trial court's rulings on Parton's sexual harassment claim. Under Title VII sexual harassment is not actionable unless it is so "sufficiently severe or pervasive" as to create an abusive and hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). The court found that Parton had been subjected to such an environment during her employment with GTE.

■ GTE asserts in its cross-appeal that the court erred in finding a violation of Title VII and also challenges the award of one dollar in nominal damages. As noted above, we will not reverse the trial court's findings of fact absent a conclusion that those findings are clearly erroneous. We have reviewed the record and note that much of Parton's evidence either concerns incidents that did not involve her, so that she was unaware of them, or reflects conduct that does not appear to be gender-based. Nevertheless, even if we are "convinced that [we] would have decided the case differently," we cannot reverse the trial court without a finding that its view of the evidence is clearly erroneous. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. We make no such finding here.

GTE cites cases from the Seventh Circuit as support for its contention that the court cannot award nominal damages on a sexual harassment claim when the court finds the plaintiff's discharge was not gender-based. It is the law of this Circuit, however, that nominal damages are appropriately awarded where a Title VII violation is proved even though no actual damages are shown. *Maney v. Brinkley Mun. Waterworks & Sewer Dept.*, 802 F.2d 1073, 1076 (8th Cir. 1986) (racial discrimination); *Dean v. Civiletti*, 670 F.2d 99, 101 (8th Cir.1982) (per curiam) (sex discrimination). The court did not err in awarding Parton one dollar in nominal damages.

■ Parton argues that she was entitled to compensatory and punitive damages for her success on her sexual harassment claim. She asks this Court to give retroactive application to 42 U.S.C.A. § 1981a(a)(1) (West Supp.1992) (enacted with the Civil Rights Act of 1991), which reads in relevant part as follows:

2. Although we have undertaken to make a "careful reading" of the trial transcript in this case, that was not always so easy. There were pages missing from the transcript, pages out of order, and pages upon which half or less of the actual testimony was reproduced because of photocopying errors. Moreover, there were apparent malfunctions in the recording device used at trial, as the notation "[inaudible]" appeared frequently in some parts of the transcript, and at times the gaps in the testimony were obvious. There were evident typographical and transcrip-

tion errors where the text made no sense as transcribed. The same person's name sometimes appeared in different places in the transcript spelled several different—sometimes very different—ways.

A transcript like this makes a review of the record inordinately time-consuming and frustrating. We do not know that this is a frequent problem in the central division of the Western District of Missouri, but we suggest that some quality control might be in order, either by the court or by the parties.

In an action brought by a complaining party under ... (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under ... (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by [42 U.S.C. § 2000e–5(g)], from the respondent.

42 U.S.C.A. § 1981a(a)(1) (parallel West citations omitted).

Assuming for the moment that this new provision would entitle Parton to damages on her sexual harassment claim, an issue that we do not reach, we hold that 42 U.S.C. § 1981a does not have retrospective application to Parton's claim, which accrued, was tried, and was pending on appeal before the effective date of new section 1981a. A presumption against retroactivity in the absence of clear-cut congressional intent to the contrary is the law of this Circuit, as recently reiterated by the Court when considering retroactive application of the Civil Rights Act of 1991. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1375–77 (8th Cir.1992) (reviewing legislative history of Civil Rights Act of 1991 and finding no congressional intent for retroactive application of Act generally). We find the reasoning of *Fray* persuasive, and applicable here. *See also id.* at 1377–78 (holding section 101 of Civil Rights Act of 1991, which amends 42 U.S.C. § 1981 to apply to employment decisions, does not apply retroactively). Parton is not entitled to compensatory or punitive damages on her sexual harassment claim.

### III.

The final matter with which the parties take issue on appeal is the court's decision concerning attorney fees, which the court awarded to Parton in accordance with 42 U.S.C. § 2000e–5(k) (1988). Parton submitted a request for fees in the amount of $92,858.21. The court awarded her fees and expenses totaling $26,292.63. The court articulated various reasons for awarding less than the amount requested, but noted that the " 'most critical factor is the degree of success obtained.' " *Parton v. GTE North, Inc.*, No. 89–4352–CV–C–66BA, slip op. at 3 n. 1, 1991 WL 355179 (W.D.Mo. Sept. 9, 1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). Parton contends she is entitled to the full amount requested; GTE believes that Parton is entitled to no fees at all.

■ First, we reject GTE's argument that Parton is not entitled to any attorney fees at all. In a Title VII case, reasonable attorney fees are appropriately awarded to the "prevailing party." 42 U.S.C. § 2000e–5(k). GTE argues that Parton cannot be a prevailing party, as the only success she achieved on her lawsuit was an award of one dollar in nominal damages for her sexual harassment claim—relief she had not even sought. It has been this court's practice, however, to allow attorney fees under federal fee-shifting statutes when only nominal damages are awarded. *See Dean v. Civiletti*, 670 F.2d at 101 ("having prevailed on the discrimination issue ... [plaintiff] is entitled to recover nominal damages of at least $1 as well as reasonable attorney's fees"); *see also Warren v. Fanning*, 950 F.2d 1370, 1375 (8th Cir. 1991) ("our circuit apparently has ruled that an award of nominal damages is sufficient to make a plaintiff a prevailing party" under 42 U.S.C. § 1988), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Mar. 27, 1992) (No. 91–8221); *Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir.1991) (en banc) ("an award of attorney fees is proper, even when only nominal damages are awarded for the denial of procedural due process").[3]

---

**3.** The analysis of the award of attorney fees under 42 U.S.C. § 1988 (1988) is applicable to fees allowed under 42 U.S.C. § 2000e–5(k) (1988). *See Hensley v. Eckerhart*, 461 U.S. 424,

433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983) (congressional intent in enacting section 1988 was that standards for awarding fees be the same as those for the fee-shifting provisions

"[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989) (emphasis in original). We hold that attorney fees were properly awarded in this case.

■ Next, we consider Parton's argument that the trial court improperly reduced her fee request. The trial court is in a unique position to ascertain the complexity of a case and thus to determine the reasonableness of counsel's time spent on a case. *Catlett v. Missouri Highway & Transp. Comm'n*, 828 F.2d 1260, 1270 (8th Cir.1987) (Title VII case), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988); *see also Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1073 (8th Cir.1991) ("The district court has broad discretion in determining the amount of attorney's fees awarded pursuant to 42 U.S.C. § 1988 (1989) [sic]."). Thus "an appeal on this issue will succeed only where the district court abused its discretion or committed error in implementing the controlling legal standards." *Catlett*, 828 F.2d at 1270.

If a lawsuit results in only limited success, then an award of fees that is unadjusted to make it proportional to the relief obtained may well be excessive. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. The court here correctly noted that Parton's degree of success relative to the claims made was sharply limited, and therefore reduced the fee award to an amount substantially less than the amount requested. We see no abuse of discretion or error of law in the court's award of fees, as the court clearly articulated good reasons for modifying the award. As Parton's success was sharply limited, so was her award of attorney fees.

Parton criticizes the trial court for not distinguishing between counsel's time spent on the successful and the unsuccessful claims, and then allocating an amount of fees to each. Parton expects more of the court than the law requires. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941. We see no proper basis for second-guessing the trial court in its determination of the amount of Parton's fee award.

## IV.

Finally, we have taken with this appeal GTE's motion for sanctions and Parton's counsel's motions for sanctions for its efforts in responding to GTE's motion. In addition to bringing its motion, GTE spent much of its time at the oral argument of this appeal criticizing not only Parton's appellate briefs, but also filings made by Parton in the trial court (for which we could not order sanctions in any event), for misstating the facts and the law. GTE obviously has strong feelings about what it perceives to be deliberate misleading of the Court by Parton's counsel, but we think GTE judges Parton's briefs too harshly. We would like to see all counsel who enter an appearance before this Court be honest and straightforward in pressing their arguments, but we are not prepared to say that, viewing Parton's briefs as a whole, her counsel has crossed the line from zealous advocacy to sanctionable practice. In like manner, we do not deem GTE's motion so frivolous as to be sanctionable. Both motions are denied.

of Civil Rights Act of 1964, thus standards set forth in Court's opinion "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); *Hanrahan v. Hampton*, 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980)

("The provision for counsel fees in § 1988 was patterned upon the attorney's fees provisions contained in Titles II and VII of the Civil Rights Act of 1964 and § 402 of the Voting Rights Act Amendments of 1975.") (citations omitted).

We affirm the judgment of the Magistrate Judge in all respects.