37 F.3d 366
 66 Fair Empl.Prac.Cas. (BNA) 61, 94 Ed. Law Rep. 1148
 Mary L. POLACCO, Plaintiff-Appellee in No. 93-3094,
Plaintiff-Appellant in No. 94-1591,
v.
The CURATORS OF the UNIVERSITY OF MISSOURI,
Defendants-Appellants in No. 93-3094,
Defendants-Appellees in No. 94-1591,
Haskell Monroe; Gerald T. Brouder; K.C. Morrison; Roger
Mitchell; William Folk, Defendants.
 Nos. 93-3094, 94-1591.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1994.
Decided July 11, 1994.
As Revised on Denial of Rehearing
and Suggestion for Rehearing
En Banc Oct. 11, 1994.
 
 Kathleen Murphy Markie, Columbia, MO, argued (Kelly Mescher, on the brief), for appellant.
 James Michael Bridges, Nixa, MO, argued (Marjorie Bedrick Tarkow, on the brief), for appellees.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 The University of Missouri at Columbia appeals a judgment awarding assistant professor Mary Polacco $100,000 in backpay and $60,000 in compensatory damages on her claim that the University discriminated on the basis of sex when it terminated her research funding. The University argues that it is entitled to judgment as a matter of law because Polacco failed to prove her case, and that the compensatory damage award is an impermissible retroactive application of Sec. 102(a) of the Civil Rights Act of 1991, Pub.L. 102-166, 105 Stat. 1071. Polacco separately appeals the district court's[1] order awarding her $48,000 in attorney's fees and costs. We reverse the award of compensatory damages on the basis of Landgraf v. USI Film Products, --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In all other respects, the district court is affirmed.
 
 I.
 
 2
 Polacco is a biochemist specializing in plant photosynthesis. She received a Ph.D. degree from Duke University and completed a postdoctoral fellowship at Yale. In 1979, the University hired her husband as a tenure-track professor of biochemistry. In 1980, the University hired Polacco as a research assistant professor in the Department of Biochemistry. This non-tenured position permitted her to remain with the University longer than the six-year tenure track and to devote her time almost exclusively to research. The University paid $10,000 of her annual salary; the balance came from the substantial grants Polacco obtained from outside sources, including a prestigious grant from the National Science Foundation.
 
 
 3
 In March 1990, Polacco's department Chairman, William Folk, advised that her $10,000 in University funding would be terminated for budgetary reasons. A faculty grievance provided no relief. Polacco then filed a sex discrimination complaint with the EEOC and, after receiving a right-to-sue letter, commenced this action against the University and four individual defendants. Her complaint alleged that the defendants violated Title VII, the Equal Pay Act, 42 U.S.C. Sec. 1983, and Missouri state law by terminating her funding, denying her a tenure-track position, and paying her a salary below that of comparable males on the faculty.
 
 
 4
 At the jury trial, Polacco presented evidence that she was a well-qualified and capable research professor who was nonetheless placed in a non-regular faculty position which the University refused to convert to tenure track. Comparable male faculty members received fifty percent more pay until Polacco complained in 1989. The following academic year, while she was completing a funded research leave in Massachusetts, Folk advised Polacco that the University would no longer pay any part of her salary. Although the University kept her on the faculty with access to its research facilities, Polacco was unable to obtain additional outside grants. Thus, she was virtually unemployed for an extended period of time after the University stopped funding her salary.
 
 
 5
 In its defense, the University presented testimony that budget cuts forced the elimination of funded faculty positions and that Polacco lost her funding because she failed to obtain new outside grants, indicating a lack of productive research. However, the jury also heard evidence that these stated reasons were pretextual. For example, Folk admitted that, when Polacco's funding was terminated, the Biochemistry Department offered $20,000 from the same budget to a prospective male professor but did not reallocate those funds to Polacco when this candidate declined the offer. There was also evidence that Polacco's grants exceeded the average generated by Department of Biochemistry faculty over a reasonable period, and that "dry spells" are normal in the highly competitive grant process.
 
 
 6
 The district court dismissed most of Polacco's claims by summary judgment or directed verdict but submitted to the jury her termination-of-funding and denial-of-tenure-track claims against Folk and the University. The jury found in Folk's favor on all claims. It found in the University's favor on the denial-of-tenure-track claim but in Polacco's favor on the termination-of-funding claim. Following denial of its post-trial motions, the University appealed. Polacco subsequently requested an award of approximately $111,000 in attorney's fees and costs. When the district court awarded only $48,335, Polacco appealed, and we consolidated the two appeals.
 
 II.
 
 7
 A. The jury found in favor of Folk, the Department chairman who decided to terminate Polacco's funding, and the district court dismissed Polacco's claims against the other individual defendants. Reasoning that an institution may be liable only for the actions of its agents, the University argues that it is entitled to judgment as a matter of law because the verdict that it wrongfully discriminated is inconsistent with the verdict in favor of Folk.[2] On the facts of this case, we disagree.
 
 
 8
 We have repeatedly held employers liable for employment discrimination even though their agents were absolved of personal liability--for example, when there was evidence of discrimination by agents who were not individual defendants, or when the discrimination was the product of an employer policy, custom, or practice. See Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1059-60 (8th Cir.1993); Parrish, 963 F.2d at 207; Jiles v. Ingram, 944 F.2d 409, 413-14 (8th Cir.1991).
 
 
 9
 Here, Polacco presented evidence that, as the wife of another faculty member, she was consistently treated as a second-class citizen in the University's Department of Biochemistry. Viewed in this context, the jury reasonably could have concluded that the termination of her funding in 1990 was the product of her employer's sexually discriminatory policy, custom, or practice, even though the individual defendants may not have intended to discriminate. To be sure, the evidence in this regard was conflicting and subject to varying inferences, but "giving [Polacco] the benefit of all reasonable inferences that can be drawn from the evidence and deciding factual disputes in favor of the verdict," it was sufficient. Latham Seed Co. v. Nickerson Am. Plant Breeders, Inc., 978 F.2d 1493, 1497 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993). When the sum of the evidence is sufficient to support a finding of employment discrimination, as it was here, we are unwilling to second-guess the factfinder's judgment that the employer, but not its individual agents, should be held liable under Title VII or, in the case of a public employer, Sec. 1983.
 
 
 10
 B. The University next argues that it is entitled to judgment as a matter of law because Polacco failed to prove an element of her prima facie case as defined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)--that she was terminated from a position ultimately filled by a male. This contention borders on the frivolous. First, it is legally without merit after the University has defended its actions at trial:
 
 
 11
 [W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII.... Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.
 
 
 12
 United States Postal Serv. Bd. of Govs. v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983) (emphasis added) (footnote omitted). See Finley v. Empiregas, Inc. of Potosi, 975 F.2d 467, 473 (8th Cir.1992).
 
 
 13
 Second, the contention is without merit factually. At trial, the University established that Polacco was not discharged; rather, her funding was terminated. The Supreme Court has stressed that the prima facie case under McDonnell Douglas "is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. See Ring v. First Interstate Mtg., Inc., 984 F.2d 924, 927 (8th Cir.1993). Since Polacco was not discharged, and her position was not totally eliminated, we think it obvious that her prima facie case did not require proof that she was replaced by a male. Cf. McCollum v. Bolger, 794 F.2d 602, 609 (11th Cir.1986), cert. denied, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); Dace v. ACF Indus., 722 F.2d 374, 377 n. 7 (8th Cir.1983).
 
 
 14
 C. The jury awarded Polacco $60,000 in compensatory damages under Sec. 102 of the Civil Rights Act of 1991, which amended 42 U.S.C. Sec. 1981a(a)(1) to permit Title VII plaintiffs to seek such damages. The Supreme Court has now clarified that compensatory damages may not be recovered under Sec. 102 for "conduct occurring before November 21, 1991." Landgraf v. USI Film Products, --- U.S. ----, ----, 114 S.Ct. 1483, 1506, 128 L.Ed.2d 229 (1994).
 
 
 15
 Polacco urges us to uphold the compensatory damage award because it might have been based upon evidence that the University treated her badly during the faculty grievance process, a process that dragged on past the effective date of Sec. 102. However, of the many claims she tried, Polacco prevailed only on the claim that her University funding was terminated in 1990 on account of sex discrimination. Thus, the award of compensatory damages was necessarily predicated on that claim and must be vacated in light of Landgraf.
 
 III.
 
 16
 After entry of judgment in her favor, Polacco applied for an award of $83,220 in attorney's fees and $28,248 in costs.[3] The district court found that her application was based upon an unreasonable hourly rate, unproductive time spent on other matters or on unsuccessful theories of recovery, excessive law clerk research, and inappropriate personal expenses. The court concluded that the application was "grossly excessive" and awarded $37,200 in attorney's fees and $11,135.17 in costs. Polacco appeals. We review the award for abuse of the district court's broad discretion. See Parton v. GTE North, Inc., 971 F.2d 150, 156 (8th Cir.1992).
 
 
 17
 The district court rejected counsel's unsupported request for $185 per hour as a lodestar fee. It determined that a reasonable rate, based on counsel's experience and ability, was $100 per hour, substantially more than the $80 per hour awarded this same attorney in Parton v. GTE North, Inc., 802 F.Supp. 255, 257 (W.D.Mo.1991), aff'd, 971 F.2d 150 (8th Cir.1992). The court further reduced the requested fee award because of Polacco's limited success in the litigation--numerous claims for substantial damages were dismissed by the court or rejected by the jury--and because excessive attorney and law clerk time was spent on "what was not a particularly complicated case." These rulings are not an abuse of the court's discretion under the governing principles of Hensley v. Eckerhart, 461 U.S. 424, 434-37, 103 S.Ct. 1933, 1939-41, 76 L.Ed.2d 40 (1983), and Farrar v. Hobby, --- U.S. ----, ---- - ----, 113 S.Ct. 566, 574-75, 121 L.Ed.2d 494 (1992). The district court also did not abuse its discretion when it rejected a request for reimbursement of certain personal expenses incurred by Polacco during the course of the litigation.IV.
 
 
 18
 The judgment of the district court dated June 21, 1993, awarding compensatory damages in the amount of $60,000 is reversed, and the case is remanded for entry of a judgment omitting that portion of the award. In all other respects, the judgments of the district court dated June 21, 1993, and February 2, 1994, are affirmed. The University's motion to strike portions of Polacco's appendix in No. 93-3094 is denied. Each party shall bear its own costs in No. 93-3094; costs shall be taxed against appellant Polacco in No. 94-1591.
 
 
 19
 Order Denying Petition for Rehearing and Suggestion for
 
 Rehearing En Banc
 Oct. 11, 1994
 
 20
 In No. 93-3094, the suggestion for rehearing en banc is denied. Judge Bowman, Judge Beam, Judge Hansen, and Judge Morris Sheppard Arnold would grant the suggestion for rehearing en banc. The petition for rehearing by the panel is also denied. On the panel's own motion, page 5 of the original panel opinion filed July 11, 1994, is substituted [Editor's Note: Substitution made for purposes of publication].
 
 
 21
 In No. 94-1591, the suggestion for rehearing en banc is denied. The petition for rehearing by the panel is also denied.
 
 
 
 [1]
 The HONORABLE SCOTT O. WRIGHT, Senior United States District Judge for the Western District of Missouri
 
 
 [2]
 By phrasing the argument in this manner, the University has arguably waived it. "If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived." Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir.1992). However, Polacco does not argue that the issue has been waived
 
 
 [3]
 See 42 U.S.C. Sec. 2000e-5(k) (the court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs")