Michael STEVENS, Plaintiff,

v.

**GRAVETTE MEDICAL CENTER HOSPITAL, Defendant.**

**Civil No. 97–5067.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Feb. 23, 1998.

Charles Fuqua, Springdale, AR, for Plaintiff.

Ralph C. Williams, Bentonville, AR, for Defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This case is before the court on plaintiff's motion for judgment as a matter of law, declaratory judgment, injunction and additur. Plaintiff also asks for an award of attorney's fees and costs.

### Background.

Plaintiff, Michael Stevens (Stevens), filed this action against his former employer, Gravette Medical Center Hospital. The complaint asserted the following causes of action: sex discrimination and retaliation under Title

VII; fraud under Arkansas common law; and sex discrimination and retaliation under the Arkansas Civil Rights Act.

Stevens is a male nurse. He began working for defendant in May of 1995. Initially he worked only part-time but later worked full-time. In June of 1996, Stevens contended he applied for a supervisory position but was denied the position because he was a male and was told he could not work with obstetric/gynecological (ob/gyn) patients. On July 8, 1996, Stevens filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). After he filed his EEOC charge, Stevens alleged that the defendant retaliated against him in a number of ways including strictly scrutinizing his job performance. He contended defendant made his working environment so intolerable that he was forced to resign on March 23, 1997.

The trial of this matter began on February 9, 1998, and concluded on February 11, 1998. Stevens requested jury instructions only on the Title VII claims. He also agreed that he was entitled to no more than $1680.00 in back wages which represented the difference in the wages he received and those he would have received had he been promoted in June of 1996 through the date of his resignation. He stipulated that he was entitled to no wages or fringe benefits after the date of his resignation. Further, he made no request for reinstatement. He did seek compensatory damages in the form of mental distress, anxiety, etc., and also sought punitive damages.

After the close of the evidence, the jury was instructed on the following three claims: (1) denial of promotion; (2) retaliation; and (3) constructive discharge.

The jury was given a number of interrogatories to answer regarding the three claims. The promotion claim was addressed in interrogatory number 1. In answering that interrogatory, the jury found that Stevens' gender was a motivating factor in defendant's decision to deny him the promotion but it also found the defendant would have in any event denied him the promotion. In other words, the jury found the defendant would have denied Stevens the promotion without considering his gender.

The retaliation claim was addressed in interrogatory number 2. The jury found in defendant's favor on this claim.

The constructive discharge claim was covered by interrogatory number 3. In answer to this interrogatory, the jury found Stevens had been constructively discharged but found the "defendant would have created such an intolerable environment that plaintiff was forced to resign regardless of his complaints of gender discrimination."

Given its answers to the prior interrogatories, the jury, following the court's instructions, did not award lost wages or employment benefits and did not award actual or punitive damages. After the verdict was read and the jury discharged, the court advised the attorneys that in light of *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) it doubted plaintiff would be entitled to an award of attorney's fees. The parties were directed to file simultaneous briefs on this issue and also to address whether Stevens was entitled to an award of nominal damages or what form the judgment should take. The court has now received the briefs of the parties.

***Discussion.***

We will address first the scope and form of judgment that should be entered. Second, we will address the plaintiff's entitlement to an award of fees.

**1. Scope and Form of Judgment.**

Stevens first argues that, as a matter of law, where a jury finds that sex was a motivating factor in the employer's decision but that it would have made the same decision regardless of plaintiff's sex, the court must enter a judgment for one dollar nominal damages. Second, he argues he is entitled to a declaratory judgment setting forth the jury's finding that the defendant had engaged in a pattern and practice of unlawfully discriminating against its employees on the basis of sex. Third, Stevens requests an injunction restraining the defendant from further sex based discrimination. In this regard, Stevens suggests that the court's order should clearly state that defendant, its

officers, servants, employees, and attorneys or any persons in active concert or participation with them who receive actual notice of the order, shall refrain from using sex based criteria as a factor in making employment and promotional decisions.

Under Title VII, as amended and supplemented by the Civil Rights Act of 1991, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102 (1991), creating 42 U.S.C. § 1981a, an aggrieved person may recover general compensatory damages in addition to the traditional employment discrimination remedy of back pay and reinstatement or front pay and punitive damages. Both punitive and general compensatory damages are expressly limited to certain dollar amounts depending upon the size of the employer. 42 U.S.C. § 1981a(b). The jury is not advised of the statutory limits. 42 U.S.C. § 1981a(c)(2). Of course, perhaps the biggest change enacted in 1991 was the grant of a right to jury trial in cases of intentional discrimination if the plaintiff is seeking compensatory or punitive damages. 42 U.S.C. § 1981a(c).

The consequences of the "same decision" finding was also altered by the 1991 amendments. Prior to the amendments, pursuant to *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), an employer who acted partly for discriminatory reasons could completely avoid liability by showing, by a preponderance of the evidence, that it would have made the same employment decision in the absence of the discriminatory motivation.

After the amendments, an employer may no longer avoid liability by showing it would have made the same decision but may limit the remedies available. Section 2000e–2(m) now provides that "an unlawful employment practice is established when the complaining party demonstrates that … sex … was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). Although it is clear such a finding establishes liability, the remedies that may be granted the aggrieved party are specifically limited. In this regard, § 2000e–5(g)(2)(B) provides as follows:

(B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e–5(g)(2)(B).

■ Mixed-motive analysis applies when the plaintiff shows a specific link between the discriminatory animus and the challenged decision sufficient to support a finding by a reasonable trier of fact that an illegitimate criterion actually motivated the challenged decision. *See e.g., Philipp v. ANR Freight System, Inc.,* 61 F.3d 669, 673 (8th Cir.1995). In other words, this analysis applies "only in 'dual-motive' cases where the complainant produces 'evidence that directly reflects the use of an illegitimate criterion in the challenged decision.'" *Carroll v. U.S. Dept. of Labor,* 78 F.3d 352, 357 (8th Cir.1996) *(quoting Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 202 (8th Cir.1993)). "Direct evidence means evidence showing a specific link between an improper motive and the challenged employment decision." *Id.* *(citing Parton v. GTE N., Inc.,* 971 F.2d 150, 153 (8th Cir.1992)).

As we noted above, the jury found Stevens had been subjected to discrimination when denied a promotion and when he was constructively discharged. However, it also found that the employer would have taken the same employment actions absent the discriminatory consideration.

■ Thus, having technically prevailed on liability but having failed to show an entitlement to compensatory damages, the question becomes what type of relief the plaintiff should be awarded. As noted above, Stevens

first argues that as a matter of law he is entitled to an award of nominal damages.

The Court of Appeals for the Eighth Circuit has on a number of occasions approved, and even directed, the judicial entry of nominal damages when an award of actual damages cannot be sustained. For instance, in *Parton v. GTE North, Inc.*, 971 F.2d 150 (8th Cir.1992) the Eighth Circuit held that nominal damages were appropriately awarded where a Title VII violation is proved even though no actual damages were shown. *Id.* at 154. *See also, Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 742 (8th Cir. 1985).

However, these cases did not involve the application of the 1991 statutory amendments. As one well-known treatise points out, "[n]ominal damages are traditionally awarded in a case in which compensatory relief is available and where liability has been established, but where the plaintiff has not established the degree of injury necessary to support an award of compensatory damages." 5 Lex K. Larson, *Employment Discrimination* § 93.09 at p. 93–23 (2d ed.1997).

■ In mixed-motives cases brought after the passage of the Civil Rights Act of 1991, the plaintiff is not entitled to an award of compensatory damages when the employer establishes it would have made the same decision absent the discriminatory motivation. Thus it would appear improper under the current statutory scheme, *set forth supra*, to enter a nominal damage award in a case brought under § 2000e–2(m). In short, in these types of cases, we do not believe the liability finding entitles the plaintiff to an award of nominal damages.

Next, Stevens argues he is entitled to a declaration that the defendant has engaged in a pattern and practice of unlawfully discriminating against its employees on the basis of sex. The court assumes Stevens is referring to the testimony elicited at trial to the effect that male nurses were not allowed to work in the ob/gyn area.

■ A pattern or practice is present when the discriminatory acts are not isolated, insignificant, or sporadic, but were repeated, routine, or of a generalized nature. In other words, gender discrimination must have been the company's standard operating procedure—the regular rather than the unusual practice. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 & n. 16, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir.1990); *Catlett v. Missouri Highway and Transp. Com'n*, 828 F.2d 1260, 1265 (8th Cir.1987); *Flavel v. Svedala Industries, Inc.*, 868 F.Supp. 1422 (E.D.Wis.1994).

In *Gilty v. Village of Oak Park*, 919 F.2d 1247 (7th Cir.1990), the court noted that in an individual case as opposed to a class action case plaintiff's "evidence of a pattern and practice can only be collateral evidence of specific discrimination against the actual plaintiff." *Id.* at 1252. *See also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 n. 6 (7th Cir.1985) (noting that pattern and practice argument seems to be misplaced in a non-class suit).

In the case of *Osborne v. Cleland*, 620 F.2d 195 (8th Cir.1980) the Eighth Circuit noted that "[e]vidence of general pattern or practice can buttress an individual's claim of discriminatory motive." *Id.* at 198. However, it indicated in an individual case there must be additional evidence showing the connection with the employment action taken against the individual defendant. *Id.* at 199.

■ In this case, Stevens did present evidence that Gravette Medical Center Hospital had a policy or a practice of not assigning male nurses to the ob/gyn area. However, the jury was not instructed on what, under the law, constitutes a pattern and practice nor was the jury asked to determine whether such a pattern and practice existed at Gravette Medical Center Hospital. As the record will reflect, plaintiff, with the exception of requesting some changes on the constructive discharge instructions, did not object to the court's jury instructions nor proffer any additional instructions. Thus, the fact is that the jury was not asked whether it found a pattern and practice of discrimination on that basis, and plaintiff did not ask that it be. For this reason, there is no way to tell whether the jurors believed that the employer engaged in a policy (pattern and practice)

of refusing to allow men to work in the ob/gyn area. In this regard, all that we know is that the jury found, and apparently believed, that plaintiff's sex was a motivating factor in the employer's actions, but that it would have acted the same anyway. Under these circumstances, there was no jury finding of a pattern and practice which could form the basis of the requested relief.

Third, Stevens requests an injunction restraining the defendant from further sex based discrimination. He contends the court clearly has the power under 42 U.S.C. § 2000e-5(g) to order the requested injunctive relief.

We believe the injunctive relief requested is not warranted under the facts and circumstances of this case. Stevens resigned his employment on March 23, 1997. He did not seek reinstatement.

Stevens made no attempt to prove that the discriminatory pattern, or systematic practice of discriminatory conduct, he contended existed, continued after his resignation. Nor did he show any lingering effects of any discriminatory practice. There is also no reasonable expectation that the discriminatory conduct will recur. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Johnson v. Brock,* 810 F.2d 219, 226 (C.A.D.C.1987)(no injunctive relief where not reasonable to conclude discriminatory acts will continue in future).

Thus, we believe Stevens is entitled to no declaratory and injunctive relief other than a declaration that in connection with its treatment of Stevens defendant violated the provisions of Title VII. This declaration is the only type of relief we believe Stevens is entitled to receive in light of the jury verdict and the evidence at trial.

### 2. Entitlement to Attorney's Fees.[1]

The party seeking an award of fees must establish that he is the prevailing party and that his fee is reasonable. *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). The Supreme Court in *Farrar*

held that a "technical" or "pyrrhic" verdict of only nominal damages did not affect the prevailing party inquiry because this inquiry did not turn on the magnitude of the relief obtained. *Farrar,* 113 S.Ct. at 572–73. To qualify as a prevailing party a plaintiff

> must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought ... or comparable relief through a consent decree.... Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.

*Farrar,* 113 S.Ct. at 573. In summarizing its holding the Court stated, "[i]n short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

Further, the court stated:

> [t]o be sure, a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status.... No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant

*Id.,* 113 S.Ct. at 573–74.

The Eighth Circuit in *Pedigo v. P.A.M. Transport, Inc.,* 98 F.3d 396 (8th Cir.1996), a case arising out of this court, discussed the impact of *Farrar* on the prevailing party analysis. *Pedigo* was brought under the provisions of the Americans with Disabilities Act (ADA). The case was appealed on two occasions. The first appeal involved the question of whether it was proper to allow the jury to award compensatory damages in a mixed-motive case. *Pedigo v. P.A.M. Transport,*

---

1. In its brief, defendant cites to 42 U.S.C. § 1988. This fee provision applies to cases brought under 42 U.S.C. § 1983. In Title VII cases, the relevant statutory authority for an award of fees is found in 42 U.S.C. § 2000e-5(k) or 42 U.S.C. § 2000e-5(g)(2)(B)(i).

*Inc.,* 60 F.3d 1300 (8th Cir.1995). The Eighth Circuit held it was not and remanded.

On remand, this court granted plaintiff relief solely in the form of a declaration that the defendant had intentionally violated the ADA. We declined to grant plaintiff's request for an award of attorney's fees in addition to the award originally granted. We also expressed doubts on whether plaintiff was a prevailing party under *Farrar.* Nevertheless, we left standing the original award of fees.

On the second appeal, the Eighth Circuit held that, under *Farrar,* the plaintiff was not a prevailing party. It noted that, under *Farrar,* a plaintiff was considered a prevailing party only if relief on the merits was obtained that directly benefitted him or her. *Pedigo,* 98 F.3d at 398. A judicial pronouncement unaccompanied by an enforceable judgment does not render the plaintiff a prevailing party.

The court stated:

Plaintiff has no enforceable judgment, that affects the behavior of the defendant toward the plaintiff. The declaratory judgment, in this case, moreover, afforded plaintiff no relief because he had already left the defendant's employ by the time that the district court declared that the defendant had discriminated against him.

*Pedigo,* 98 F.3d at 398.

But for the statutory amendments concerning mixed-motive cases set forth above, we would have no hesitation in holding that under *Farrar,* despite having technically prevailed on liability, plaintiff is not a prevailing party and is not entitled to an award of fees. However, at least with respect to the promotion claim, this case is, as was discussed above, a mixed-motives case. In such cases, Title VII provides that the court "may grant ... attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title." 42 U.S.C. § 2000e-5(g)(2)(B)(i).

The question becomes whether *Farrar* should be applied to mixed-motives cases given the language and intent of the 1991 statutory amendments. Some courts have held that this provision indicates the congressional

intent was to allow plaintiffs who have established a mixed-motive case to recover attorney's fees. *See e.g., Snell v. Reno Hilton Resort,* 930 F.Supp. 1428 (D.Nev.1996). Thus, despite *Farrar* the mixed-motive plaintiff was deemed a prevailing party and awarded fees even though "[p]laintiff's success is nothing more than the satisfaction of having her belief that she was a victim of illegal employment discrimination validated by the jury's verdict." *Snell,* 930 F.Supp. at 1431.

■ Clearly the use of the word "may" confers discretion on the court. *Sheppard v. Riverview Nursing Center, Inc.* 88 F.3d 1332 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996). In *Sheppard* the Fourth Circuit applied the *Farrar* factors to a mixed-motives case in which the applicable fee provision was 42 U.S.C. § 2000e-5(g)(2)(B)(i). In the *Sheppard* case, the only relief granted the plaintiff was declaratory relief. Nevertheless, the district court granted an award of fees discounting the applicability of *Farrar* and its proportionality test.

The Fourth Circuit reversed finding that the logic applied in *Farrar* barred an award of fees. In so doing, it stated:

When assessing whether to grant fees, *Farrar* requires that courts consider the relationship between the fees and the degree of the plaintiff's success. The district court seemed to be of the view that, because § 2000e-5(g)(2)(B) already limits the scope of recovery, *Farrar's* concern with proportionality makes little sense in this context: "Denying recovery of attorney's fees in this situation on the rationale of 'lack of success' would render the statute ineffective and practically meaningless." Section 2000e-5(g)(2)(B) does prohibit any recovery of damages, and so we agree with the trial court that simply comparing the extent of damage recovery with the attorney's fees would amount to an empty exercise. Nevertheless, if denial of fees would invariably render the statute "ineffective" and "practically meaningless," Congress would have written a mandatory provision requiring that attorney's fees be awarded in every case. That it did not do so sug-

gests that Congress was wary of enacting legislation whose benefit inures primarily to lawyers in the form of a substantial fee recovery, even if relief to the plaintiff is otherwise trivial and the lawsuit promotes few public goals.

Factoring proportionality concerns into the analysis helps guard against this result. In appropriate cases, for instance, courts should consider the reasons why injunctive relief was or was not granted, or the extent and nature of any declaratory relief. Moreover, *Farrar's* concern was not only with whether the extent of recovery accords with the amount of attorney's fees. The decision suggested a more general proportionality consideration as well: whether the public purposes served by resolving the dispute justifies the recovery of fees.

Such an analysis should apply here. By definition, an illicit factor will have played some role in cases subject to § 2000e–5(g)(2)(B). But within that category of cases, there are large differences. Some mixed-motive cases will evidence a widespread or intolerable animus on the part of a defendant; others will illustrate primarily the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant. The statute allows district courts to distinguish among cases that are in reality quite different.

*Sheppard,* 88 F.3d at 1336 (citations omitted).

It concluded that "[f]actoring *Farrar's* principles into the analysis under § 2000e–5(g)(2)(B) will not suppress the incentive to file Title VII actions." *Sheppard,* 88 F.3d at 1336. We find this reasoning persuasive and agree with the statement in *Sheppard* that Congress did not intend to place "mixed-motive plaintiffs in a more favorable position than plaintiffs for whom discrimination is the sole cause of an adverse employment decision." *Sheppard,* 88 F.3d at 1338. *See also Canup v. Chipman–Union, Inc.,* 123 F.3d 1440 (11th Cir.1997).

■ Applying this analysis, we find that, for purposes of a fee award, Stevens is not a prevailing party. Assuming Stevens is a prevailing party, we would nevertheless, for the reasons discussed below, conclude that the only reasonable fee in this case is no fee at all.

Prevailing party status entitles that party to an award of reasonable fees. However, the Court made clear that reasonableness implies commensurability with results obtained. *Farrar,* 113 S.Ct. at 574. In the Court's view, the most critical factor in determining the reasonableness of a fee award was the degree of success obtained. *Id.*

In her concurring opinion, Justice O'Connor "weighed three factors to determine whether the plaintiff had won a mere technical victory in a civil rights case: 1) the difference between the amount recovered and the damages sought; 2) the significance of the legal issue on which the plaintiff prevailed; and 3) any public goal or purpose the litigation might have served." *Jones v. Lockhart,* 29 F.3d 422, 423–24 (8th Cir.1994), *citing, Farrar,* 113 S.Ct. at 578–79. *See also Muhammad v. Lockhart,* 104 F.3d 1069 (8th Cir.1997); *Piper v. Oliver,* 69 F.3d 875 (8th Cir.1995).

The *Farrar* Court dealt with a § 1983 case in which the only relief granted was an award of $1.00 in nominal damages. Under those circumstances, the court held that a reasonable attorney's fee was zero. *Id.* 113 S.Ct. at 575.

Plaintiff concedes that, if the only relief entered by the court is a declaratory judgment, he was denied a promotion and that sex was a motivating factor in the denial, then his victory is so insignificant as to be insufficient to support a prevailing party status and an award of fees. However, he contends the verdict in this case was not merely a technical or *de minimis* victory. He argues that 42 U.S.C. § 2000e–5(g) gives specific statutory authority for payment of attorney's fees in cases such as this.

He advances a number of factors which he believes distinguishes this case from *Farrar* and *Pedigo* and justifies an award of fees in this case. First, he argues that this case is a Title VII sex discrimination case in which the issue is straight forward and easy to comprehend and in which the litigation has a definite public purpose, *i.e.,* to end sex discrimination

on the part of defendant. Second, he argues another clear difference is that he sought both monetary damages and injunctive relief whereas the plaintiff in *Farrar* sought only monetary damages in the amount of $17 million. Third, plaintiff argues there is no dramatic difference between the amount he sought and the amount he recovered because he requested only $1680 in lost income plus whatever sum the jury deemed to be appropriate to compensate him for mental anguish and an award of punitive damages. While he did not obtain a significant monetary award, he contends his suit did strike a significant blow against sex based discrimination in the workplace and achieved a significant public purpose.

Plaintiff also seeks to distinguish *Pedigo* by arguing that in *Pedigo* there was no finding by the jury that defendant engaged in a pattern and practice of discrimination. As we noted above, there was no such *finding* by the jury in this case either.

Defendant suggests that under *Farrar* the only reasonable fee in this case is no fee. First, defendant points out that plaintiff sought back pay, damages for mental anguish, and punitive damages. Next, defendant points out that plaintiff left the defendant's employ and it therefore had, and has, no chance to correct the problem. In sum, defendant argues plaintiff achieved only a *de minimis* victory.

The Eighth Circuit cases of *Muhammad v. Lockhart*, 104 F.3d 1069 (8th Cir.1997), *Piper v. Oliver*, 69 F.3d 875 (8th Cir.1995), and *Jones v. Lockhart*, 29 F.3d 422 (8th Cir.1994) are also instructive on the issue before us. *Muhammad* was a section 1983 civil rights action. Muhammad contended his procedural due process rights had been violated during various disciplinary hearings and that the compulsory use of ill-fitting shoes amounted to cruel and unusual punishment. *Muhammad*, 104 F.3d at 1069–70. The jury found in Muhammad's favor against all defendants and awarded him nominal damages of $1.00.

Muhammad's counsel requested a fee of $5,956.00 and costs of $1,505.40. The district court awarded a fee of $4,500 and costs in the amount requested. *Id.* at 1070. On review,

the Eighth Circuit Court of Appeals affirmed.

The court noted its decision was guided by Justice O'Connor's concurring opinion in *Farrar*. In discussing the application of these factors to the case before it, the court noted that, with respect to the extent of relief achieved, it could not be said plaintiff had failed to prove an essential element of his claim for monetary relief because Muhammad "did not ask for any specific dollar amount." *Muhammad*, 104 F.3d at 1070. Next, it noted that Muhammad "not only succeeded on the significant matter of liability, he got a judgment against all eight defendants as well." *Id.* Finally, it stated that it did not hesitate to say the verdict "accomplished a public goal, namely, encouraging governments scrupulously to perform their constitutional duties." *Id.*

It further stated that "[b]ecause we discern indicia of real success in Mr. Muhammad's victory, despite the fact that his judgment was for nominal damages only, we hold that the district court did not err in determining that he had achieved a material victory." *Id.* It found no indication that the amount of fees granted was unreasonable.

In *Piper* the court was also asked to review a fee award in a § 1983 case in which only nominal damages was awarded. Here Piper, an Arkansas bail bondsman, was determined to have been illegally detained at the Ashley County Jail for three hours while officers made the determination to confiscate and forfeit as drug money a $2,500 payment by one of Piper's clients. The detention was found to violate Piper's Fourth Amendment rights. Piper requested an award of $21,303.72 in attorney's fees and $854.72 in costs. The court awarded $7,500 to cover fees and costs.

Piper then requested an additional $1,485 in fees and $115.11 in costs for litigating the fee issue. The court awarded an additional $750. Defendant appealed the award of any fees and Piper cross appealed contending the district court abused its discretion in awarding only a fraction of the fees requested.

The Eighth Circuit affirmed. It noted that the "district court's task is to use the

factors set out by Justice O'Connor and adopted by this circuit in *Lockhart*, to determine whether a civil rights plaintiff's victory was merely a technical or pyrrhic one that merits no award of attorney's fees." *Piper*, 69 F.3d at 877. In its opinion, the district court carefully applied the correct analysis and concluded that Piper won more than a mere technical victory. *Id.* It then found no error in the district court's reduction by almost two-thirds the requested fee.[2] *Id.*

In *Jones*, a § 1983 case, the plaintiff was awarded $1.00 in compensatory damages and $1.00 in punitive damages on an excessive force claim. Defendants prevailed on all other claims.

Plaintiff had requested an award of fees in the amount of $31,540. The district court awarded fees of $25,000. The Eighth Circuit affirmed but remanded for a reduction of the fee award to $10,000. In so ruling, the court noted that *Farrar* did not prohibit a fee award in the case and that, when Justice O'Connor's factors were applied, Jones was entitled to a fee award. It held that *Farrar* did not foreclose an award of fees when a plaintiff receives only nominal damages. Rather, *Farrar* went no further than to say that in such cases the only reasonable fee is usually no fee.

Specifically, in applying the three factors the court held:

First, although there is a discrepancy between the amount of damages sought and the amount recovered ($860,000 sought, $2 recovered), it pales in comparison to the discrepancy presented in *Farrar* ($17,000,-000 sought, $1 recovered). Second, we find that vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in *Farrar*. Third, civil rights litigation serves an important public purpose; "[a] plaintiff bringing a civil rights action 'does so not for himself alone but also as a "private attorney general," vindicating a

policy that Congress considered of the highest priority.' "

*Jones*, 29 F.3d at 424 (citations omitted).

Of interest also is the Eighth Circuit's opinion in *Milton v. Des Monies, Iowa*, 47 F.3d 944 (8th Cir.1995), *cert. denied*, 516 U.S. 824, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995). *Milton* was a § 1983 case. In that case Milton brought a claim against three police officers, the City of Des Monies, and a medical center on claims arising from an incident where he was injured during an arrest. *Id.* at 945. The plaintiff asserted a variety of claims and sought both compensatory and punitive damages. Milton later withdrew his claim for punitive damages and dismissed his claims against the medical center. The court ultimately dismissed the case against the city.

The evidence showed that during the arrest Milton suffered blows to the head that resulted in medical bills totally approximately $6,000. *Id.* The jury found that one officer was liable to the plaintiff for the use of excessive force and battery. *Id.* The jury awarded $1 in damages for past physical and mental pain and suffering.

Plaintiff originally sought recovery of fees and costs in an amount over $79,000. *Id.* The district court denied Milton's request for fees and costs, finding that, although he was a prevailing party, his moral victory and nominal damage award were not of such great public significance as to justify an award of fees or costs.

The Eighth Circuit noted that:

[a]lthough some of the same factors considered in *Jones* were also present in this case—*i.e.*, the discrepancy between the amount claimed and the amount received was not as great as *Farrar*; and the civil right Milton sought to vindicate was a significant issue contrary to the issue in *Farrar*—these factors do not dictate an award of attorney's fees. The district court retains its discretion and specifically considered all relevant factors of this case in making the fee determination. Were we

---

**2.** Judge Loken dissented noting that when a § 1983 plaintiff recovers only one dollar that the

only reasonable fee is usually no fee.

the district court, we might have reached a different result; nevertheless, we cannot say that the district court abused its discretion here given its express consideration of all the factors listed above.

*Id.* at 947.

In this case, Stevens, although he did not seek much in the way of lost wages, sought relief both in the form of compensatory and punitive damages. He has also made requests post-trial for injunctive relief. He achieved none of this.

He has received nothing from the jury other than the decision that he had been subjected to a discriminatory denial of promotion and had been constructively discharged. Even on these claims, the jury found he would not have received the promotion and would have been forced to resign even absent the discriminatory considerations. Stevens will receive no relief from the jury or the court other than a declaration that defendant was found to have violated the provisions of Title VII.

The court agrees that a significant legal interest is at issue and that a public goal is served by such litigation. However, in this case no significant precedent has been established that will serve to alter the behavior of potential defendants. In short, we believe this case has conferred no substantial benefit on Stevens or on anyone else.

*Conclusion.*

Judgment in accordance with this opinion will be entered. Plaintiff's motion for attorney's fees will be denied.

### *JUDGMENT*

On this 23rd day of June, 1997, came on for consideration the above captioned case. For the reasons stated in a memorandum opinion ruling on plaintiff's motion for judgment as a matter of law, declaratory judgment, injunction and additur, the court finds said motion should be and hereby is denied in part and granted in part. Specifically, the court finds that in accordance with the jury verdict the plaintiff is entitled to a declaration that the defendant violated Title VII. All other requests for relief are denied. Plain-

tiff's request for attorney's fees is also denied.

IT IS THEREFORE ORDERED AND ADJUDGED, in accordance with the jury verdict returned on February 11, 1998, and the applicable statutory provisions of Title VII, 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B), that the plaintiff was subjected to sex discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII). Specifically, the jury found the plaintiff's sex, male, was a motivating factor in defendant's denial of a promotion to plaintiff and in its constructive discharge of plaintiff.

This action is hereby dismissed with prejudice.

IT IS SO ORDERED.