**Nancy Peery BALES, Plaintiff,**

v.

**WAL–MART STORES, INC., and Robert Vallejo, Defendants.**

No. 4–95–CV–20875.

United States District Court,
S.D. Iowa,
Central Division.

June 19, 1997.

Thomas J. Jackowski, Des Moines, IA, for Nancy Peery Bales.

Fred L. Morris, Des Moines, IA, for Wal–Mart Stores, Inc.

Edward N. McConnell, Des Moines, IA, for Robert Lee Vallejo.

### RULING ON POST–TRIAL MOTIONS, AND APPLICATION FOR ATTORNEYS FEES AND EXPENSES

BREMER, Chief United States Magistrate Judge.

This matter is before the Court on Defendant Robert Lee Vallejo's Combined Motion for Judgment as a Matter of Law and Motion for New Trial (Clerk's No. 37), Defendant Wal–Mart Stores, Inc.'s, Motion for Judgment as a Matter of Law (Clerk's No. 40), and Plaintiff Nancy Peery Bales' Motion for Attorneys Fees and Reimbursement of Expenses (Clerk's No. 36).

### I. *Background and Facts*

This case was tried to a jury from March 6 to 10, 1997. The parties consented to proceed before a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). Bales asserted claims against both defendants for sexual harassment based on quid pro quo and hostile-work-environment theories under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e–2(a)(1); and the Iowa Civil Rights Act, Iowa Code Chapter 216 (ICRA). She also alleged that constructive discharge entitled her to front and back pay.

At trial, Bales introduced testimony and other evidence, including admissions by Vallejo, who was the store's pharmacist and Bales' supervisor, that he made unwelcome sexual advances toward Bales at work. These advances included his repeated sexual innuendoes and descriptions of his dreams about her; pulling her hair; twisting her smock "playfully;" offering to come to her home to console her when she was having personal problems; changing "six" to "sex" in material Bales read over a loudspeaker; stating he would leave his wife and stay with Bales in the hotel in which she was temporarily living; calling her at home to say he had "Nancy withdrawal;" and purchasing copies of Glamour ShotsTM photographs of her without her permission.

The evidence at trial showed various Wal–Mart supervisors were advised of some of Vallejo's harassing behaviors toward Bales. The supervisors, however, did little to investigate or end the harassment, beyond advising Bales to ignore and avoid Vallejo, or encouraging her to talk with other Wal–Mart supervisors about the problem. After the sexual harassment had occurred for several months, Wal–Mart management investigated Bales' complaint triggered by the Glamour ShotsTM incident, transferred her out of the pharmacy, and gave Vallejo a written warning for unprofessional behavior. A few months later, Bales transferred to another Wal–Mart store to avoid working in the same store as Vallejo. She quit after not receiving

a suitable schedule. She claimed constructive discharge.

The jury returned a verdict on March 10, 1997, finding in favor of Bales on her claims for hostile-work-environment sexual harassment, and in favor of the defendants on the quid pro quo claims and the allegation of constructive discharge. The jury awarded Bales $1 nominal damages against Wal–Mart and $28,000 for past emotional damages against Vallejo on the hostile-work-environment harassment claims. The jury did not award punitive damages.

Bales resisted Vallejo's Combined Motion for Judgment as a Matter of Law and Motion for New Trial and Defendant Wal–Mart's Motion for Judgment after Trial. A hearing was held on the motions on April 9, 1997.

Defendants resisted Bales' Motion for Attorney Fees and Reimbursement of Expenses. This matter is fully submitted.

## II. *Analysis*

### A. Post-trial Motion Standards

#### 1. Judgment as a Matter of Law

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) poses a legal question concerning whether sufficient evidence was presented to support a jury verdict. *Gray v. Bicknell,* 86 F.3d 1472, 1478 (8th Cir.1996). The motion is properly granted only if the nonmoving party has not offered sufficient evidence to support a jury verdict in its favor. *Parrish v. Immanuel Med. Ctr.,* 92 F.3d 727, 731 (8th Cir.1996); *Gray,* 86 F.3d at 1478; *Abbott v. Crocker, Mo.,* 30 F.3d 994, 997 (8th Cir.1994). Before ruling on such a motion, a court must (a) resolve direct factual conflicts in favor of the nonmovant; (b) assume as true all facts supporting the nonmovant that the evidence tended to prove; (c) give the nonmovant the benefit of all reasonable inferences; and (d) deny the motion if the evidence would allow reasonable jurors to differ as to the conclusions that could be drawn. *Parrish,* 92 F.3d at 731; *Gray,* 86 F.3d at 1478; *Sherlock v. Quality Control Equip. Co.,* 79 F.3d 731, 735 (8th Cir.1996).

Sufficiency of the evidence is a legal issue. *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996) (citing *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992)). In determining the issue, a court views the evidence "in the light most favorable to the prevailing party." *Tidwell,* 93 F.3d at 494; *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1400 (8th Cir.1994) (quoting *White,* 961 F.2d at 779). The Court does not weigh the evidence on a Rule 50 motion or assess its credibility. *White,* 961 F.2d at 779; *see Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554, 110 S.Ct. 1331, 1337–38, 108 L.Ed.2d 504 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Butler v. French,* 83 F.3d 942, 943 (8th Cir.1996); *Abbott,* 30 F.3d at 997. "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible to no reasonable inference sustaining the position of the nonmoving party." *Kehoe v. Anheuser–Busch, Inc.,* 96 F.3d 1095, 1100 (8th Cir.1996) (quoting *Tidwell,* 93 F.3d at 494).

#### 2. New Trial

A new trial may be granted under Federal Rule of Civil Procedure 59 for several reasons, including the ground that the jury's verdict was against the great weight of the evidence, so that granting a new trial would prevent a miscarriage of justice. *Shaffer v. Wilkes,* 65 F.3d 115, 117 (8th Cir.1995); *Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.,* 913 F.Supp. 1256, 1267–68 (N.D.Iowa 1996). Although the power of the trial court is broad, the court should not,

> substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has.... The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with the firm conviction that the jury has erred.

*Ryan v. McDonough Power Equip., Inc.,* 734 F.2d 385, 387 (8th Cir.1984) (citations omitted).

In determining whether a verdict is against the weight of the evidence, "the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even

where there is substantial evidence to sustain a verdict.' " *Century Wrecker*, 913 F.Supp. at 1268 (citations omitted).

The district court's discretion in denying or granting a motion for new trial is, however, limited by several factors. *Id.* at 1268. In weighing testimony, for example, the court must find that evidence supporting the verdict is not credible, or that evidence can be otherwise properly rejected. *Id.*

A federal court is guided by the law of the forum state in determining questions as to the adequacy or excessiveness of a verdict. *See Keenan v. Computer Assoc. Int'l., Inc.*, 13 F.3d 1266, 1273 (8th Cir.1994); *Peoples Bank & Trust Co. v. Globe Int'l Publ'g, Inc.*, 978 F.2d 1065, 1070 (8th Cir.1992); *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 477 (8th Cir.1993). In Iowa, a party may obtain a new trial where the damages awarded are "[e]xcessive or inadequate . . . appearing to have been influenced by passion or prejudice," or where the verdict "is not sustained by sufficient evidence, or is contrary to law." Iowa R. Civ. P. 244(d)(f).

■■■ A court will not set aside or alter a verdict unless it is: "(1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motives; or (4) is lacking in evidential support." *Kautman v. Mar–Mac Community Sch. Dist.*, 255 N.W.2d 146, 147–48 (Iowa 1977) (internal citations omitted); *see Cowan v. Flannery*, 461 N.W.2d 155, 157–58 (Iowa 1990); *Jackson v. Roger*, 507 N.W.2d 585, 589 (Iowa.Ct.App.1993). The key question is the amount and sufficiency of evidence to support the award made. *Id.* "[W]here the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question." *Id.* The determinative question is whether, under the record, "the verdict effects substantial justice between the parties." *Id.*

### B. *Vallejo's Motions*

Vallejo bases his Rule 50(b) and 59 motions on the. following grounds: the Court should have dismissed the Title VII and Iowa Code Chapter 216 claims against Vallejo individually as a matter of law, because Vallejo bears no individual liability under either statute; insufficient evidence supported the claim against him; and the Court should consider the jury's verdict against Vallejo on the *hostile-work-environment* claim as advisory, rather than binding, and should enter judgment in favor of Defendants.

### 1. *Individual Liability*

#### a. *Federal Claims*

■■■ Vallejo asserts that while he may be sued in his official capacity as a supervisor, he may not be held individually liable under Title VII or Iowa Code Chapter 216. Specifically, Vallejo contends he is not an employer and thus cannot be held personally liable under either statute.

Noting that the law is unclear regarding whether Vallejo as supervisor may be held individually liable under Title VII, Bales does not contend that Vallejo should be individually liable. Rather, Bales argues that Wal–Mart is liable for Vallejo's conduct, because Vallejo was acting in his official capacity as a supervisor when he harassed Bales. Wal–Mart argues that it does not have vicarious liability for Vallejo's acts.

Title VII defines an employer as follows:

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . .

42 U.S.C. § 2000e(b) (1995); *see Lenhardt v. Basic Inst. of Technology, Inc.*, 55 F.3d 377, 380 (8th Cir.1995).

The Eighth Circuit has not decided this issue. *Lenhardt*, 55 F.3d at 380. In *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994), the court held that liability under Title VII attaches only to employers, not to co-workers sued in their individual capacities, even though such co-workers might be considered agents of their employer. *Lenhardt*, 55 F.3d at 380 (citing *Smith*, 19 F.3d at 1255).

District courts in the Eighth Circuit are split on this issue. *Compare Engle v. Barton County Mem'l Hosp.,* 864 F.Supp. 118, 119–20 (W.D.Mo.1994) (no individual liability) *and Williams v. Rothman Furniture Stores, Inc.,* 862 F.Supp. 239, 240–41 (E.D.Mo.1994) (same) *with Russell v. City of Overland Police Dep't,* 838 F.Supp. 1350, 1352 (E.D.Mo. 1993) (individual liability).

Similarly, district courts in Iowa have reached different conclusions. *See Tenny v. The Basilica of Saint John,* No. 4–94–CV–30102, Order at 19 (S.D.Iowa May 23, 1995) (following case law in district finding no individual liability imposed on supervisors under Title VII); *Engstrand v. Pioneer Hi–Bred Int'l, Inc.,* No. 4–94–CV–80326, 1994 WL 780902 (S.D.Iowa 1994) (same); *Accordino v. Langman Constr., Inc.,* 862 F.Supp. 237, 239 & n. 1 (S.D.Iowa 1994)(following weight of authority finding no personal liability for individual supervisors under current language of Title VII). *But see Schallehn v. Central Trust & Sav. Bank,* 877 F.Supp. 1315, 1331 (N.D.Iowa 1995) (holding individual liability may be imposed on supervisory employees under ADEA).

Courts which have held that an employee-supervisor cannot be sued in his or her individual capacity under Title VII generally have determined that "Title VII actions brought against individual employees are against those employees in their 'official' capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants." *Lenhardt,* 55 F.3d at 380; *Tenny,* No. 4–94–CV–30102, at 19 (holding plaintiff could be sued only in her official capacity as employee-supervisor and was entitled to dismissal of individual claims against her under Americans With Disabilities Act and ICRA).

This Court elects to follow this district's case law. *See Accordino,* 862 F.Supp. at 239. The Court holds that Vallejo may not be held individually liable on the Title VII claim, but Bales was entitled to proceed with her Title VII action against Vallejo in his official capacity as supervisor. Liability on this claim can be imposed only against Wal–Mart as the common employer of Bales and Vallejo.

#### b. *State Claims*

No Iowa appellate courts have reached the question of individual liability of a supervisor under the ICRA. The federal courts in this district have split in unpublished decisions over whether a plaintiff can proceed with claims against individual defendants in their individual capacities under the ICRA, where the defendants are supervisory employees. *Compare Tenny,* No. 4–94–CV–30102, at 19 (finding individual liability could not be imposed on supervisory employees under Americans with Disabilities Act or ICRA, but that claims against individual defendants in their official capacities under the ICRA could proceed), *with Moriarty v. Ryder Truck Rental, Inc.,* No. 4–95–CV–10618, Order (S.D.Iowa Dec. 1995) (finding individual liability claims could proceed under ICRA); *Comer v. Library Binding Services, Inc.,* 4–94–CV–10427, Order (S.D.Iowa Nov. 22, 1995) (same); *Williams v. Greyhound Lines, Inc.,* 4–94–CV–10495, Order (S.D.Iowa Nov. 30, 1994) (same).

Iowa courts have applied federal principles and analytical framework to civil rights cases under Chapter 216. *Lynch v. City of Des Moines,* 454 N.W.2d 827, 833 (Iowa 1990); *Tenny,* No. 4–94–CV–30102, Order at 19 (citing *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893–94 (Iowa 1990); *Hulme v. Barrett,* 449 N.W.2d 629, 631–33 (Iowa 1989); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983)).

The Iowa Code defines an employer as follows:

7. *"Employer"* means the state of Iowa or any political subdivision, board, commission, department, institution, or school district thereof, and every other person employing employees within the state.

Iowa Code § 216.2(7) (1995). Section 216.6(a)(1) defines unfair employment practices in part as follows:

1. It shall be an unfair or discriminatory practice for any:

a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against

... any employee because of the age, race ... sex ... of such ... employee....

Iowa Code § 216.6(1)(a) (1995); *see Grahek v. Voluntary Hosp. Coop., Ass'n,* 473 N.W.2d 31, 35 (Iowa 1991). "Person" means "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." Iowa Code 216.2(11) (1995).

The language in Section 216.6(1)(a) prohibiting "any person" from discriminating in employment extends "to some situations in which a person guilty of discriminatory conduct is not the actual employer of the person discriminated against." *Sahai v. Davies,* 557 N.W.2d 898, 901 (Iowa 1997) (holding prohibition in Section 216.6(1)(a) did not apply to actions of clinic and physician, where clinic's role in hiring decision was merely advisory in response to prospective employer's request). Specifically in the context of "discharg[ing] any employee," in Section 216.6(1)(a), however, the Iowa Supreme Court has interpreted "person" to refer only to the employer. *See Grahek,* 473 N.W.2d at 35 ("Obviously only the employer ... can discharge an employee."). Similarly, the court has interpreted "person" in Section 216.6(1)(a) to include only employers in the context of the statutory language, "otherwise discriminate in employment." *Id.*

To analyze this issue, the Court looks to analogous federal civil rights statutes, as the Court believes the Iowa Supreme Court would. *Cf. Lenhardt,* 55 F.3d at 381. Every federal circuit that has considered the issue has ultimately concluded that an employee, including a supervisor, is not an employer upon whom liability can be imposed under Title VII. *Id.* (stating Missouri Supreme Court would interpret definition of "employer" in Missouri statute in manner consistent with circuit courts construing Title VII's definition, and would hold state statute's definition did not subject employees, including supervisors or managers, to individual liability).

Title VII's definition of "employer" is analogous to the ICRA's definition, although not identical. Title VII defines "employer" as follows:

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

42 U.S.C. § 2000e(b).

The Court holds that a claim for hostile work environment falls within the "otherwise discriminate in employment" language in Section 216.6(1)(a). Because the Iowa Supreme Court has limited the applicability of the language "otherwise discriminate in employment" in Section 216.6(1)(a) to apply only to employers, the Court holds that a hostile-work-environment claim applies only to employers.

Following the reasoning in *Lenhardt* and *Tenny,* the Court holds that the Iowa Supreme Court would interpret the definition of an employer in a manner consistent with the decision of the federal circuits that have addressed the issue. The Court believes the Iowa Supreme Court would hold that the definition of employer in the Iowa Code does not subject supervisory employees to individual liability. Because the "otherwise discriminate in employment" language in Section 216.6(1)(a) applies only to employers, and the definition of employer in the Iowa Code does not subject supervisory employees to individual liability, it follows that a hostile-work-environment claim does not subject supervisory employees to individual liability.

The Court holds that Vallejo was not Bales' employer within the meaning of Iowa Code Chapter 216 for purposes of the hostile-work-environment claim, and that accordingly, no individual liability attached to Vallejo under the ICRA. Vallejo is entitled to dismissal of these claims against him in his individual capacity. Vallejo could be sued only in his official capacity as an employee or agent of Wal–Mart. Liability on this claim can be imposed only against Wal–Mart as the common employer of Bales and Vallejo. *See Lenhardt,* 55 F.3d at 380; *Tenny,* No. 4–94–CV–30102, at 19.

### 2. *Sufficiency of Evidence*

█ In his Motion for New Trial, Vallejo contends the jury verdict against him was

not sustained by sufficient evidence, was excessive, and was the result of the jury's passion and prejudice.

At trial, testimony showed, and Vallejo admitted that he made unwelcome sexual advances toward Bales at work, including the following: repeated sexual innuendoes and descriptions of his dreams about her; pulling her hair; twisting her smock "playfully"; offering to come to her home to console her when she was having personal problems; changing "six" to "sex" in material Bales read over a loudspeaker; stating he would leave his wife and stay with Bales in the hotel in which she was temporarily living; calling her at home to say he had "Nancy withdrawal"; and purchasing copies of Glamour ShotsTM photographs of her without her permission.

Giving Bales the benefit of all reasonable inferences and resolving any factual conflicts in her favor, the Court concludes the evidence produced was sufficient to support a jury verdict in Bales' favor. The Court therefore denies Vallejo's Motion for Judgment as a Matter of Law.

■ The Court turns next to consideration of Vallejo's alternative Motion for New Trial. The jury's verdict on liability was not against the great weight of the evidence, so that granting a new trial would prevent a miscarriage of justice. The Court holds that the jury verdict on the hostile-work-environment claim was sustained by sufficient evidence, and was not contrary to law.

The Court therefore denies Vallejo's alternative Motion for a New Trial on this issue.

### 3. *Jury Verdict as Advisory*

■ Vallejo asserts the Court should consider the jury's verdict on the hostile-work-environment claim as advisory, rather than binding, and should enter judgment in favor of Defendants.

■ The right to a jury trial in federal court is a question of federal law, even when a state statute or constitution would preclude a jury trial in state court. *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 230 (8th Cir. 1996) (holding plaintiff seeking damages under Missouri Human Rights Act was entitled

to jury trial in federal court). When a federal plaintiff seeks damages, either party may demand a jury trial. *Id.* The right to a jury trial includes statutory causes of action, if the statute allows, and the plaintiff seeks, at least in part a legal remedy. *Id.* at 231. The ICRA authorizes actual damages, as well as equitable remedies. Iowa Code § 216.15(8)(a)(8); *Fink v. Kitzman*, 881 F.Supp. 1347, 1388 (N.D.Iowa 1995).

Applying the reasoning in *Gipson*, the Court holds Bales was entitled to a jury trial in federal court. *See Gipson*, 83 F.3d at 231. Alternatively, even if the Court could use the jury only in an advisory capacity, the Court would make its findings based on the facts as outlined herein, and would make findings similar to those found by the jury in awarding a verdict for Bales on her federal and state claims for hostile work environment and against her on the quid pro quo claim and constructive discharge. Additionally, the damage award of $28,000 for past emotional distress was reasonable, supported by the evidence, and would be the judgment entered by this Court.

### C. *Wal–Mart's Motions*

■ Wal–Mart bases its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) on the following grounds: insufficient evidence supported the claim against Wal–Mart; and the fact the jury entered a $28,000 award against Vallejo for past emotional distress, but only a $1 nominal damages award against Wal–Mart on the hostile-work-environment claim indicates that the jury did not want to find against Wal–Mart and that the verdict was supported only by insufficient evidence.

The Eighth Circuit has "repeatedly held employers liable for employment discrimination even though their agents were absolved of personal liability—for example, when there was evidence of discrimination by agents who were not individual defendants, or when the discrimination was the product of an employer policy, custom, or practice." *Polacco v. Curators of the Univ. of Mo.*, 37 F.3d 366, 368 (8th Cir.1994) (declining to second-guess jury's judgment that employer, but not its individual agents, should be held

liable under Title VII, where sum of evidence was sufficient to support finding of employment discrimination).

The evidence at trial showed various Wal–Mart supervisors were advised of Vallejo's harassing behavior toward Bales. For months, the supervisors did little to investigate or end the harassment beyond advising Bales to ignore and avoid Vallejo or encouraging her to talk with other Wal–Mart supervisors about the problem. Some supervisors ultimately took remedial action. Before effective action was taken, however, some delay occurred, during which Bale's rights were violated. During this time, Bales continued to work under direct supervision of Vallejo, and may not have been experiencing the most severe of her emotional distress.

Giving Bales the benefit of all reasonable inferences and resolving any factual conflicts in her favor, the Court holds the evidence produced was sufficient to support a jury finding that Wal–Mart knew or should have known of the harassment and failed to take prompt and appropriate remedial action. The evidence is sufficient to support a verdict in Bales' favor against Wal–Mart. The damages awarded against Vallejo were for past emotional distress. The discrepancy in the damages awarded against Vallejo and Wal–Mart could reasonably reflect the jury's determination that Vallejo had a more active and on-going role than did Wal–Mart in directly causing Bales' emotional distress.

The Court denies Wal–Mart's Motion for Judgment as a Matter of Law.

### D. *Attorneys Fees*

Bales seeks $48,938.75 in attorneys fees and $3,699.56 for reimbursement of expenses.

Wal–Mart contends that Bales is entitled to no fees at all, because Bales was not the prevailing party against the company, and because the nominal damages awarded against the company did not support an award of attorney fees. Vallejo and Wal–Mart argue that Bales' attorneys fee request is grossly unreasonable and excessive.

"A prevailing plaintiff in a Title VII action is entitled to recover costs, including reasonable attorney fees." *Peanick v. Morris,* 96 F.3d 316, 322 (8th Cir.1996) (citing 42 U.S.C. § 2000e–5(k) (West Supp. V 1993)).

### 1. *Prevailing Party*

██ Wal–Mart argues that Bales is not a prevailing party against the company, because the jury awarded only nominal damages against Wal–Mart.

A plaintiff who wins nominal damages, however, is a prevailing party under 42 U.S.C. § 2000e–5(k). *Parton v. GTE North, Inc.,* 971 F.2d 150, 155 (8th Cir.1992); *see Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992)(42 U.S.C. § 1988 case); *Milton v. Des Moines, Iowa,* 47 F.3d 944, 945 (8th Cir.1995) (affirming district court's reasoning that while plaintiff was prevailing party within meaning of § 1988, his moral victory and nominal damages award were of insufficient public significance to justify attorneys fee award), *cert. denied,* —— U.S. ——, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995). This is because, "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar,* 506 U.S. at 113, 113 S.Ct. at 574. Furthermore, Wal–Mart is liable not only for the $1 in nominal damages, but also for the $28,000 assessed against Vallejo in his official capacity. *See Lenhardt,* 55 F.3d at 380; *Tenny,* No. 4–94–CV–30102, at 19.

The Court holds that Bales is a prevailing party against Wal–Mart within the meaning of 42 U.S.C. § 2000e–5(k). The Court next must determine what amount of fee award is reasonable.

### 2. *Amount of Attorneys Fees*

Bales argues she is entitled to the full amount of attorneys fees requested; Wal–Mart contends that Bales is entitled to no fees at all, because the nominal damages award against the company does not support an award of attorneys fees, and because Bales' request is grossly unreasonable and excessive.

For an objective basis on which to form an initial estimate of the value of a lawyer's services, the "most useful starting point ...

is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court should exclude from this initial calculation any hours that were not "reasonably expended," including those hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434, 103 S.Ct. at 1939–40. After determining the product of reasonable hours times a reasonable rate, a court may adjust the fee up or down after examining other considerations, including "the important factor of the 'results obtained.'" *Id.*

In cases where a plaintiff has prevailed on some, but not all, of his claims, the plaintiff is entitled only to an amount of fees that is reasonable in relation to the results obtained. *Jenkins v. State of Missouri*, 115 F.3d 554, 557–58 (8th Cir.1997) (determining fee award under Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (West Supp. 1997), citing *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943). Analysis of an award of attorney fees under 42 U.S.C. § 1988 is applicable to fees allowed under 42 U.S.C. § 2000e–5(k). *Parton*, 971 F.2d at 155 n. 3.

In making this determination, a court must address two questions: (1) did the plaintiff fail to prevail on claims unrelated to the claims on which he succeeded, and (2) did the plaintiff's level of success make the hours reasonably expended a satisfactory basis for making a fee award? *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. Where a plaintiff's claims involve a common core of facts or are based on related legal theories, it is difficult to apportion hours worked on a claim-by-claim basis. *Id.* at 435, 103 S.Ct. at 1940. In such a case, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Where a plaintiff's success is only partial or limited, the product of hours reasonably spent on the litigation as whole times a reasonable hourly rate may be an excessive amount, even where the claims were interrelated and raised in good faith. *Id.* at 436, 103 S.Ct. at 1941. The "most critical factor" is the degree of a plaintiff's overall success. *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574–75;

*Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941; *Peanick*, 96 F.3d at 323(affirming relatively small attorney fee award of $500, where damages award was $100, trial court rejected claims at heart of case, and plaintiff succeeded only on claim covering minor issue that received little attention); *Parton*, 971 F.2d at 155.

Any fees must be reasonably expended, "so that services that were redundant, inefficient, or simply unnecessary are not compensable." *Jenkins*, 115 F.3d at 558.

No precise rule or formula governs these determinations. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. A court may try to identify specific hours that should be eliminated, or it may, at its discretion and after weighing the considerations identified in *Hensley*, simply reduce the award to account for the limited success. *Id.; Parton*, 971 F.2d at 156. In *Parton*, the plaintiff obtained only $1 in nominal damages for her sexual harassment claim, and did not prevail on her discrimination claim. *Parton*, 971 F.2d at 153–54. Although the plaintiff requested $92,858.21 in fees, the court awarded only $26,292.63, mainly because of the plaintiff's limited success. *Id.* at 155–56. The law did not require the trial court to distinguish between counsel's time spent on the successful and unsuccessful claims. *Id.* at 156.

In this case, Bales asserted two claims against each defendant for sexual harassment based on quid pro quo and hostile-work-environment theories. Bales sought an award of damages for past emotional distress. She sought a significant amount of punitive damages against Wal–Mart. She also sought back pay and front pay totaling approximately $9000 on the grounds of constructive discharge.

The jury found that both defendants were liable on the hostile-work-environment claim, but not on her quid pro quo harassment claim. The jury found that Bales was not constructively discharged, but quit, and therefore awarded no front or back pay. The jury awarded $28,000 for past emotional distress against Vallejo, for which Wal–Mart is liable, and $1 in nominal damages against

Wal–Mart. No punitive damages were awarded.

Here, Bales requests $1,148.00 ($140 per hour times 8.2 hours) in attorneys fees for Todd Elverson, and $44,832 ($120 per hour times 373.6 hours)in attorneys fees for Thomas Jackowski. In addition, Bales seeks $2,958.75 ($37.50 per hour times 78.9 hours) in fees for the law clerk, for a total fee of $48,938.75. Wal–Mart and Vallejo suggest a reasonable rate would be $140 per hour for Elverson, $100 per hour for Jackowski, and nothing for the law clerk, for a total fee award of approximately $29,363.25.

■ Based on counsel's experience and ability, and the prevailing market rates in the Southern District of Iowa for similar cases, the Court determines that a reasonable rate is $125 per hour for Elverson, $90 per hour for Jackowski, and $37.50 per hour for the law clerk.

■ The Court further determines that excessive attorney and law clerk time was spent on the case, especially in view of the fact that the case was not particularly complicated. For example, in her Application for Attorneys Fees and Reimbursement of Expenses, hours on trial, and 35.3 hours on research.

■ The Court next considers the relation between the relief sought and the outcome of the case. Focusing on the significance of the relief Bales obtained in relation to the hours reasonably expended on the litigation, the Court adjusts the fee award to make it proportional to the relief obtained.

Bales brought quid pro quo and hostile-work-environment claims. These claims were grounded in Title VII and the Iowa Civil Rights Act. Every claim was based on Bales' assertions of discrimination based on sex and on a common core of facts. Applying the *Hensley* court's analysis, the Court holds these are related claims. Because the claims in this case were similar, the Court declines to attempt to identify specific hours that should be eliminated.

Considering the complexity of the case and the relation between the relief sought and the outcome of the case, the Court determines that reasonable fees are as follows: $769.16 for Elverson, $30,037.44 for Jackowski, and $1,983 for the law clerk, for a total fee award of $32,789.60.

### E. *Expenses*

Bales requests $3,699.56 for expenses. Wal–Mart asserts that Bales' application for expenses should be denied insofar as the expenses are unreasonable and not sufficiently specific to allow the Court to apportion them among the successful and unsuccessful claims.

■ As discussed above, Bales' claims are similar. The Court therefore does not attempt to identify specific expenses that should be excluded, nor does the Court expect Bales to apportion expenses between the similar claims.

Bales' Bill of Costs filed March 21, 1997 (Clerk's No. 42), shows a total of $3,819.56 and lists the same expenses specified in Bales' Application, with the exception of an additional $120 for the filing fee. Defendants did not object to the Bill of Costs.

The Court finds that the expenses Bales requests, including the $120 filing fee, are reasonable and are awarded.

### III. Conclusion

Vallejo's Motion for a New Trial and Wal Mart's Motion for Judgment as a Matter of Law are denied. Vallejo's Motion for Judgment as a Matter of Law is granted as to claims against him individually, but denied as to claims against him in his official capacity. Judgment on Plaintiff's claim based upon hostile work environment entered March 10, 1997, is amended to state that it is against Vallejo in his official capacity only. Plaintiff's Application for Attorneys Fees and Reimbursement of Expenses is granted. Judgment shall be entered in the amount of $32,789.50 for fees ($769.16 for Elverson, $30,037.44 for Jackowski, and $1,983 for the law clerk) and $3,819.56 for expenses.

IT IS SO ORDERED.