**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3029

_____

Nancy Peery Bales,                            *
                                              *
            Plaintiff - Appellee,             *
                                              *
      v.                                      *
                                              *   Appeals from the United States
Wal-Mart Stores, Inc.,                        *   District Court for the
                                              *   Southern District of Iowa.
            Defendant - Appellant.            *
                                              *
Robert Lee Vallejo, Supervisor,               *
                                              *
            Defendant.                        *

_____

No. 97-3030

_____

Nancy Peery Bales,                            *
                                              *
            Plaintiff - Appellee,             *
                                              *
      v.                                      *
                                              *
Wal-Mart Stores, Inc.,                        *
                                              *
            Defendant,                        *
                                              *
Robert Lee Vallejo, Supervisor,               *
                                              *
            Defendant - Appellant.            *

_____

No. 97-3032

_____

Nancy Peery Bales,         *
                                 *

       Plaintiff - Appellant,    *
                                 *

     v.                       *
                                 *

Wal-Mart Stores, Inc.; Robert Lee   *
Vallejo, Supervisor,        *
                                 *

       Defendants - Appellees.   *

_____

Submitted:  March 11, 1998
Filed:  May 7, 1998

_____

Before McMILLIAN, FAGG, and BOWMAN,[1] Circuit Judges.

_____

BOWMAN, Circuit Judge.

Robert Lee Vallejo and Wal-Mart Stores, Inc., appeal from the judgment of the District Court[2] entered on a jury verdict in favor of Nancy Peery Bales on her claim of sexual harassment.  Bales cross appeals.  We affirm.

_____

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]The Honorable Celeste F. Bremer, Chief United States Magistrate Judge for the Southern District of Iowa, who conducted the proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

-2-

Bales worked as a clerk in the pharmacy department of the Wal-Mart store in Boone, Iowa, from January 1994 until April 1995. Vallejo was the pharmacist at the store during that time. After filing the requisite complaints with state and federal agencies and receiving notice of her right to sue, Bales filed a complaint in federal court in December 1995 claiming that she was subjected to both quid pro quo and hostile work environment sexual harassment because of Vallejo's behavior, and that she was constructively discharged. She made her claims under Title VII, see 42 U.S.C. §§ 2000e to 2000e-17 (1994 & Supp. I 1995), and the Iowa Civil Rights Act (ICRA), see Iowa Code Ann. §§ 216.1-.18 (West 1994 & Supp. 1998).

After a four-day trial, the case was submitted to a jury. The jury returned verdicts in favor of the defendants on Bales's claims of quid pro quo sexual harassment and constructive discharge. The jury found in favor of Bales on her claim of hostile work environment sexual harassment and awarded her actual damages of $28,000 against Vallejo individually for past emotional distress and nominal damages of $1 against Wal-Mart. No punitive damages were awarded.

In ruling on post-trial motions, the District Court granted Vallejo's motion for judgment as a matter of law (JAML) as to the judgment entered against him in his individual capacity. See Bales v. Wal-Mart Stores, Inc., 972 F. Supp. 483, 488, 489 (S.D. Iowa 1997). The court ruled that Vallejo could be liable only in his capacity as an employee of Wal-Mart, so the responsibility to pay Bales $28,000 in money damages was shifted from Vallejo to Wal-Mart.[3]

Wal-Mart appeals, challenging the sufficiency of the evidence of a hostile work environment and contending that the court erred in determining that Wal-Mart should

---

[3]The court also awarded attorney fees and costs to Bales. None of the parties challenges those awards (except to the extent that they would be reversible if the case were to be reversed on the merits).

be liable for the damages the jury originally assessed against Vallejo in his individual capacity. Vallejo also raises sufficiency questions. For her argument on cross appeal, Bales claims "[t]he district court improperly dismissed the Plaintiff's claim against Defendant Vallejo in his individual capacity under" ICRA. Brief of Bales at 47.

## I.

We first address the questions raised by Vallejo and Wal-Mart as to whether the evidence was sufficient to sustain a finding of hostile work environment. There are five elements that Bales was required to prove to prevail on her claim: that she was a member of a protected group, that she was subjected to unwelcome harassment in the workplace, that the harassment was based on sex, that the harassment affected a "term, condition, or privilege of employment," and that Wal-Mart "knew or should have known of the harassment and failed to take proper remedial action." Todd v. Ortho Biotech, Inc., ___ F.3d ___, ___, Nos. 97-1126, 97-1220, 1998 WL 92207, at *2 (8th Cir. Mar. 5, 1998). We view the evidence in the light most favorable to Bales, and we must affirm the judgment if a reasonable jury could have found that Bales was subjected to conduct that constituted a hostile work environment under the applicable law. See Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir. 1997).

When Bales went to work in the pharmacy department of the Boone, Iowa, Wal-Mart store, she was single and twenty-two years old. Vallejo was at least twenty years her senior. At that time, Bales had a boyfriend, later fiancé, with whom she was living. Nancy Bales *nee* Peery married Gary Bales in June 1995, after she had left the pharmacy department. We mention this relationship because it is the focus of some of the conduct of which Bales complains. Among the earliest of the incidents that Bales recalled was Vallejo's comment to her, upon seeing a photograph of her boyfriend, that he "wasn't good enough" for her. Transcript vol. I at 29. The Baleses' relationship was stormy at times, and Vallejo took an inappropriate interest, for whatever reason, in the couple's conflicts. Around Labor Day 1994, Bales called the store on a Monday and

said she was sick and would not be in to work. She called in sick again the next day, and when Vallejo found out, he called her at home. Bales told him she was not sick but that she was unable to come to work for personal reasons. When Vallejo insisted on knowing what those reasons were, she hung up the telephone. He called back several more times, and during one of those calls threatened to fire her if she did not tell him what the personal problem was. She indicated that he should fire her, because she did not wish to discuss the problem with him or with anyone else, and hung up the telephone again. He called back once more, and eventually she did tell him that she had a fight with her boyfriend over his infidelity with a prostitute some months before, about which she had just learned. Only after Bales told Vallejo the details of this very personal dispute did he stop pestering her. As a result of another argument, Bales at one time moved out of the home she shared with Gary and went to stay at a motel. The next morning at work she was visibly upset. When Vallejo asked why, she told him she and Gary had fought and that she had moved to a motel. Vallejo responded that this might be a good time for him to leave his wife, and he would probably see her at the motel. This was not the only time he told Bales about his unhappiness with his wife and his desire to leave her. He also told her "about [his] affairs with other people." Id. vol. I at 36.

On occasion Bales would hear Vallejo talking aloud, and when she asked him about it he told her he was having conversations with her "in his head." Id. vol. I at 34. He called her at home and told her he was having "Nancy withdrawals." Id. vol. III-A at 345. Vallejo told Bales that he had a dream about her in a sexy red dress, and asked her if she owned one, and on another occasion told her that he had dreamed about her in a blue swimsuit. He also reported to Bales that he had dreamed that he had engaged in sexual relations with another female pharmacy clerk. If Bales did not allow herself to be drawn into personal banter with Vallejo, she found that he took away the job duties that she enjoyed most. Vallejo called Bales, and all of his employees (who at the time were all female), "hon" or "honey" or "dear." He also called Bales "Nancy Hart," the name of the person he described as "his one true love, the person that he should

-5-

have married," and told Bales she reminded him of Nancy Hart. Id. vol. I at 48. Vallejo regularly annoyed Bales by doing such things as pulling her hair and twisting or tugging at her smock.

In the summer or fall of 1994, there was an incident in the pharmacy involving a demonstration of the proper way to use an inhaler. A co-worker was showing Bales, in Vallejo's presence, how to use the device, and Vallejo made comments about the activity and what he thought was its similarity to oral sex, with references to blowing or sucking. At another time, Vallejo sent Bales into the store to get a red marker off the shelf, as he had lost the one he was using in his work. She brought back "a pretty good-sized red marker" and he laughed and told her "that it looked like a big red penis." Id. vol. I at 33. On a different occasion, Bales was slated to make an announcement over the store's public address system concerning an in-store promotion on a six-pack of a diet drink. Unbeknownst to Bales until she was reading the script over the store's speaker system, Vallejo had edited the text, changing "six" to "sex." It became his practice during Bales's months working in the pharmacy department "to jump on certain words," giving them sexual connotation where none was intended. Id. vol. I at 29. On Bales's birthday in January 1995, she received from Vallejo a birthday card that she and others believed to be sexually suggestive. The card was signed only by Vallejo, notwithstanding the tradition in the pharmacy department of giving group birthday cards signed by all pharmacy employees.

The last harassing event before Bales left the pharmacy department occurred in April 1995. Earlier that spring, Bales had photographs of herself taken at a portrait studio where the subject is given a fashion "makeover" of sorts before the photos are taken: makeup is done, hair is styled, and clothing is selected to reflect different moods. Pictures of Bales were taken in various poses and attire, including one where she was wearing a jacket and another "in a low-cut, black dress that shows a lot of skin." Id. vol. I at 67. When she received the proofs, she brought them to work and showed them to various people in the pharmacy, including Vallejo. She later brought

to work some finished wallet-sized photos of herself in a pose where she was wearing the jacket, and gave them to certain people, including Vallejo. Vallejo then took it upon himself to drive to the portrait studio in Des Moines, Iowa, to order more photos. Bales testified that an employee at the studio later told her that Vallejo represented himself to the employee as her boyfriend in order to purchase the photos. On the morning of April 4, Vallejo presented Bales with photos of herself in one of the "sexier" poses. Id. vol. II-B at 215. He said he actually had ordered a different pose (he wanted the pose that showed her back, he told her) and since the studio made a mistake, they had given him the photos for free, so he was giving them to her.

The next day, Bales complained to assistant manager Julie Stock, who told Bales she could go home if she wished, and she did. Stock then spoke with the store manager. She was instructed to call Ron Anderson, pharmacy district manager for Wal-Mart. He arrived at the store and took statements from Bales (who had been called back to the store for the meeting with Anderson), Vallejo, and others in the pharmacy department. Bales indicated to Anderson that she could no longer work with Vallejo. When he learned that information from Anderson, Vallejo immediately began looking for a replacement for Bales by posting the position, evidently assuming she would be the one leaving the pharmacy. During his interview with Vallejo, Anderson asked Vallejo if he would feel "more comfortable" if he, Vallejo, were transferred from the store in Boone. Id. vol. III-A at 370 (testimony of Vallejo); vol. IV at 579 (testimony of Anderson). Vallejo declined and so he was not moved, but Bales was reassigned to another department in the Boone store. Vallejo eventually was reprimanded for inappropriate behavior. Bales continued to feel that Vallejo was harassing her, actually stalking her, by wandering unnecessarily through her new department and driving by her house. She asked for and received a transfer, to the Wal-Mart store in Ames, Iowa, in October 1995. But there were scheduling problems, in part because of the distance of the store from her home. She terminated her employment with the Ames Wal-Mart in November 1995.

A.

Vallejo argues that Bales failed to produce sufficient evidence that his behavior, the conduct at issue here, was unwelcome, that is, "uninvited and offensive." <u>Quick v. Donaldson Co.</u>, 90 F.3d 1372, 1378 (8th Cir. 1996) (quoting <u>Burns v. McGregor Elec. Indus., Inc.</u>, 989 F.2d 959, 962 (8th Cir. 1993)). That the conduct in question is unwelcome is "[t]he gravamen of any sexual harassment claim." <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 68 (1986). This is a fact question for the jury and "will turn largely on credibility determinations." <u>Quick</u>, 90 F.3d at 1378. Therefore, the jury here having found Vallejo's conduct toward Bales to be unwelcome, we will be hesitant to reverse the finding of sexual harassment on this ground.

Vallejo claims that Bales "gave him gifts and treat[ed] him like a friend" and therefore his conduct toward her was invited. Brief of Vallejo at 30. It is undisputed that Bales gave Vallejo--and his wife--a candle and a card for Christmas in 1994, nearly a year after Bales started working in the pharmacy department and a few months before she felt she could no longer work with Vallejo; she gave similar gifts to all of her co-workers that Christmas. We conclude that this gift did not invite the behavior to which Vallejo subjected Bales, nor did it "constitute an invitation to engage in sexual discourse." <u>Burns</u>, 989 F.2d at 964 (agreeing with the district court that plaintiff's having posed nude for a nationally distributed magazine did not lead inevitably to the conclusion that workplace harassment was welcome). Bales also gave Vallejo, and selected others working in the pharmacy, a wallet-sized photo of herself that she had taken at the portrait studio in spring of 1995, in one of the more modest poses. This was hardly an invitation for Vallejo to drive to Des Moines and purchase "sexier" photos of Bales for himself, the incident that precipitated Bales's decision that she could no longer work with Vallejo.

Moreover, the record demonstrates that Bales made it known to Vallejo on a number of occasions that she did not welcome his behavior. <u>See</u> <u>Quick</u>, 90 F.3d at

-8-

1378 ("The proper inquiry is whether the plaintiff indicated by [her] conduct that the alleged harassment was unwelcome."). She told him not to call her "honey" or "dear." Transcript vol. I at 29 (testimony of Bales); id. vol. III-A at 358 (testimony of Vallejo). She complained about the hair-pulling. She told him she was "not comfortable with some of the things he was saying," and believed her response was adequate to let him know she was "offended." Id. vol. I at 32. At the time of the inhaler incident, Bales told Vallejo that he was "sick" and walked away. Id. vol. I at 46 (testimony of Bales); vol. III-A at 358 (testimony of Vallejo). She told him to stop calling her Nancy Hart ("his one true love"). Id. vol. I at 48. Vallejo himself admits that, before the final incident with the photos, Bales complained to him "four or five" times about his conduct towards her. Id. vol. III-A at 379, 402.

Even if the nature of the conduct at issue here is not sufficient on its face to demonstrate that it was uninvited and offensive, see Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216, 1223 (8th Cir. 1997) ("[I]t stretches credulity to conceive that a reasonable jury might have thought [plaintiffs] welcomed from their co-workers the conduct detailed in the evidence at trial."), the evidence of Bales's reaction to it, in Vallejo's presence, is sufficient to support the jury's finding that his behavior toward her was unwelcome.

## B.

Wal-Mart alleges that only a few of the incidents at issue in this case "have a sexual connotation," and then proceeds to list eight such incidents in evidence. Brief of Wal-Mart at 32. Based on this reading of the record, Wal-Mart then argues that Bales failed to show that the harassment was based on sex. This argument verges on the frivolous.

As the Supreme Court recently has reiterated, harassment is not "automatically discrimination because of sex merely because the words used have sexual content or

connotations." Oncale v. Sundowner Offshore Svcs., Inc., 118 S. Ct. 998, 1002 (1998). But as Wal-Mart's half-hearted argument on this point attests, this element is not seriously at issue in the case. The record speaks for itself, and to contend that Vallejo's behavior was not based on sex is disingenuous. No one, not even Wal-Mart, suggests for a moment that Vallejo would have engaged a male co-worker in the conversations in which he engaged Bales, or that he would have behaved toward a male employee as he did towards Bales. Cf. id. ("[I]t is reasonable to assume [explicit or implicit proposals of sexual activity] would not have been made to someone of the same sex."). A reasonable jury easily could find that Vallejo's harassment of Bales was based on sex.

C.

Both Wal-Mart and Vallejo contend that the incidents in evidence were not so "severe or pervasive" as to alter Bales's work conditions and amount to actionable sexual harassment. Meritor Sav. Bank, 477 U.S. at 67. We think the record belies that claim.

"In conducting its fact-based inquiry into the severity and pervasiveness of the conduct . . ., the jury looks at all the circumstances supported by credible evidence." Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997); accord Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111 (8th Cir. 1997) (noting "fact-intensive" nature of the determination of whether a work environment is hostile within the meaning of Title VII, "including the frequency of the conduct and its severity"). Having examined the record, we conclude that there was substantial credible evidence to support the jury's finding of severity and pervasiveness. Vallejo's behavior was neither isolated nor innocent. The comments and conduct directed at Bales were offensive, oftentimes overtly sexual or personal. Bales was "[d]emeaned" and "embarrassed" by Vallejo's actions. Transcript vol. I at 33. She felt that Vallejo, with some of his behavior, was trying to "intimidate" her and make her feel "scared." Id. vol. I at 37. It is true that ordinarily

"[a] single offensive utterance or exposure to distasteful conduct does not rise to the level of a Title VII violation." Hathaway, 132 F.3d at 1221. But that does not describe the record in this case. The incidents recounted at trial began soon after Bales started work in the pharmacy department and continued until shortly before her departure from the Boone Wal-Mart. Vallejo's offensive actions abated only for short periods of time when Bales would indicate that she was upset with him, and then they would begin anew. To the extent the record shows the dates of the incidents described, it would appear that the frequency of the troublesome conduct waxed and waned, and that there were times when Vallejo was more restrained in his conduct than he was at other times. But there was a clear pattern of offensive conversation and behavior, not merely an isolated incident or two. The evidence thus permitted the jury to find that the cumulative effect of Vallejo's conduct was to create a hostile work environment based on sexual harassment. See Smith v. St. Louis Univ., 109 F.3d 1261, 1264 (8th Cir. 1997) (noting that conditions of employment are altered by harassment if the employee is discouraged from remaining in her job). "There is no bright line between sexual harassment and merely unpleasant conduct so a jury's decision must generally stand unless there is trial error." Hathaway, 132 F.2d at 1221. On this record, we see no reason to disturb the jury's findings.

## D.

Finally, Wal-Mart argues that there was insufficient evidence that it knew or should have known of the harassment and failed to take proper remedial action. According to Wal-Mart, as soon as its managers knew of Bales's allegations, after the incident with the photos, they investigated and took appropriate corrective action by reprimanding Vallejo (but moving Bales, not Vallejo, out of the pharmacy department when she indicated she could no longer work with him).[4] It is true that Wal-Mart

---

[4]We do not need to address whether the action taken by Wal-Mart in relocating Bales instead of Vallejo was proper remedial action.

management responded promptly after the photo incident. But the contention that management was unaware of the harassment until April 1995 misrepresents the record.

Fairly early in her tenure with the pharmacy department, Bales complained to Donna Bollenbaugh about Vallejo's behavior toward Bales. Bollenbaugh was the over-the-counter manager in the pharmacy. Wal-Mart contends that Bollenbaugh was not Bales's manager nor was she a supervisor, so she was not the proper person for Bales to approach with her concerns. We read the record differently. Bales; Bollenbaugh; Al Beckum, an assistant manager at the Boone Wal-Mart during the relevant period; and Lonnie Neubauer, store manager at Boone, all acknowledged in their testimony at trial that Bollenbaugh had supervisory authority over Bales. See Transcript vol. I at 39; vol. II-B at 259, 264; vol. III-A at 322. Neubauer responded affirmatively to the inquiry, "Under [Wal-Mart's] open-door policy, it would be appropriate for Nancy Bales to complain to Donna Bollenbaugh, her supervisor, about any harassment she felt she was the victim of?" Id. vol. III-A at 334. Although not the most senior management person to whom Bales might have complained, there is sufficient evidence that Bollenbaugh was a proper person for Bales to approach with her complaints.

It is clear from the record that Bales complained to Bollenbaugh repeatedly about Vallejo's conduct. When approached by Bales, Bollenbaugh, who indicated that she was independently aware of the problem, told Beckum and Neubauer about the harassment, and believed at that point that her responsibilities were fulfilled. Neubauer told Bollenbaugh to tell Bales to come to him, but Bollenbaugh did not relay that message to Bales. When Bales did not come to him, Neubauer did not follow up. Likewise, Beckum did not follow up on Bales's complaint delivered to him via Bollenbaugh. No one spoke to Bales or to Vallejo or to the other employees in the pharmacy department about Bales's complaints until April 5, 1995, after the proverbial "last straw," when Bales said she could no longer work with Vallejo. We conclude there is ample evidence in the record to show that Bales's employer knew about her

-12-

complaints of sexual harassment by Vallejo months before the incident with the photos in April 1995, and that it failed to take appropriate steps to remedy the situation.[5]

## II.

Wal-Mart also asks us to decide whether "the trial court erred in finding Wal-Mart vicariously liable for Vallejo's acts." Brief of Wal-Mart at 24. After the jury reached its verdict, awarding Bales $28,000 in damages against Vallejo, the District Court, upon deciding post-trial motions, held that "[l]iability on [these] claim[s] can be imposed only against Wal-Mart as the common employer of Bales and Vallejo." Bales, 972 F. Supp. at 488, 489. The court then granted in part Vallejo's motion for JAML, as to the claims against him in his individual capacity, and amended the judgment "to state that it is against Vallejo in his official capacity only." Id. at 493.[6] At that point,

_____

[5]Now pending before the Supreme Court is the case of Faragher v. City of Boca Raton, 118 S. Ct. 438 (1997) (argued March 25, 1998), resolution of which (along with other cases the Court will decide this term) may definitively answer the question whether an employer may be held strictly liable for sexual harassment resulting from a hostile work environment when the harassment is committed by a supervisory employee. It is currently the law of this Circuit, recently reaffirmed, that "[e]ven when the hostile environment was created by a supervisor's sexual harassment, the employer is not liable unless it 'knew or should have known of the harassment yet failed to take proper remedial action.'" Todd v. Ortho Biotech, Inc., ___ F.3d ___, ___, Nos. 97-1126, 97-1220, 1998 WL 92207, at *3 (8th Cir. Mar. 5, 1998) (quoting Davis v. City of Sioux City, 115 F.3d 1365, 1368 (8th Cir. 1997)). In any event, we need not wait for resolution of Faragher or the other cases because we conclude Wal-Mart knew or should have known of Vallejo's harassment of Bales.

[6]In its brief, Wal-Mart mentions ICRA but does not make a legal argument for reversal of the court's holding under state law. See Brief of Wal-Mart at 24-28; Reply Brief of Wal-Mart at 2-6. The company argues for reversal under Title VII. Bales, as appellee, responds that the District Court did not err in holding Wal-Mart liable for the damages the jury originally assessed against Vallejo. As cross appellant, however, Bales argues that "[t]he district court improperly dismissed the Plaintiff's claim against

Wal-Mart, which of course employed Vallejo, became responsible for paying all of the damages to Bales.

After the District Court opinion was issued in this case (but before the briefs were filed) we noted in a per curiam opinion that "[o]ur Court quite recently has squarely held that supervisors may not be held individually liable under Title VII." Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist., 121 F.3d 446, 447 (8th Cir. 1997) (citing Spencer v. Ripley County State Bank, 123 F.3d 690, 691-92 (8th Cir. 1997) (per curiam)). Thus the District Court properly decided that Vallejo could be liable only in his capacity as an employee of Wal-Mart and that the damages assessed against Vallejo were properly imposed upon the "common employer" of Bales and Vallejo. Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377, 380 (8th Cir. 1995) (dictum); see, e.g., Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996) ("[S]tatutory liability [under Title VII] is appropriately borne by employers, not individual supervisors."); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir.) ("[W]hile a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, *who is alone liable for a violation of Title VII*.") (emphasis added), cert. denied, 516 U.S. 1011 (1995).

The jury found a violation of Title VII, and also found both Vallejo and Wal-Mart were liable to Bales for that violation. The jury further found that Bales was actually damaged in the amount of $28,000. Considering that Vallejo can be liable only in his capacity as a Wal-Mart employee, and given Wal Mart's culpability as

---

Defendant Vallejo in his individual capacity under" ICRA. Id. at 47. She did not designate this as a protective cross appeal. Nevertheless, at oral argument counsel for Bales agreed that resolution of the question whether there can be individual liability under ICRA (a question that has yet to be addressed by the Iowa Supreme Court) is unnecessary if we find that Wal-Mart is liable under Title VII. Because of our holding under federal law, we need not and do not consider the state law question.

determined by the jury, it is neither an error of law nor inequitable to order Wal-Mart to pay the full amount of the damages the jury awarded to Bales.

## III.

The judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.